_____

No. 95-1255
_____

Michael Aucutt,                          *
                                         *
                Appellant,               *
                                         *
        v.                               *
                                         *
Six Flags Over Mid-America,              *
Inc., a Missouri corporation             *
in good standing,                        * Appeal from the United States
                                         * District Court for the
                Appellee.                * Eastern District of Missouri
                                         *
---------------  *
                                         *
Equal Employment Advisory                *
Council,                                 *
                                         *
                Amicus Curiae.           *

_____

            Submitted:  November 16, 1995

                Filed:  June 5, 1996
            _____

Before McMILLIAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.
            _____

McMILLIAN, Circuit Judge.


     Michael Aucutt appeals from a final judgment entered in the United
States District Court[1] for the Eastern District of Missouri  granting
summary judgment in favor of Six Flags over Mid-America, Inc. (Six Flags).
Aucutt v. Six Flags Over Mid-America, Inc., 869 F. Supp. 736, 744 (E.D. Mo.
1994).  For reversal, plaintiff argues the district court erred in holding
that (1) plaintiff had failed

_____

     [1]The Honorable Steven N. Limbaugh, United States District
Judge for the Eastern District of Missouri.

to establish a prima facie case on his Age Discrimination in Employment Act (ADEA) claim or, in the alternative, had failed to rebut the legitimate, nondiscriminatory reason for his termination proffered by defendant and (2) plaintiff had failed to establish a prima facie case of disability discrimination in violation of the Americans with Disabilities Act (ADA). For the reasons discussed below, we affirm the judgment of the district court.

## I. Background

After a career in the United States Army, Aucutt was hired by Six Flags in April 1990 as a seasonal security guard at its amusement park in Eureka, Missouri. At the time he was hired, Aucutt was 41 years old. In May 1990, Six Flags made Aucutt a full-time security guard. His duties in this position included patrolling the amusement park and its parking lot. Aucutt held this position until October 1992, when he was discharged, at the age of 44.

During his employment at Six Flags, Aucutt was diagnosed with high blood pressure, angina, and coronary artery disease. He informed his supervisors at Six Flags of these medical conditions. In July 1991, Aucutt became ill while at work. He was transported to a hospital, treated for high blood pressure and released after several days. He returned to work approximately three weeks later with a doctor's statement releasing him for work and stating that he should not lift more than twenty-five pounds. Aucutt alleges that when he returned to work, Tom Robertson, the vice-president of Six Flags, initially told him that he would be discharged but later informed him that he would not be discharged after all. Aucutt also alleges that on the same day, Keith Hendricks, the Admissions Supervisor, told him that the "insurance people did not want him back [at]. . . work." Joint App. 45-46. Six Flags denies these allegations. It is undisputed, however, that Six Flags refused Aucutt's repeated requests to be allowed to drive air-conditioned

-2-

vehicles on warm days.  Six Flags was also aware that Aucutt could not perform a "streams course," a mandatory employee obstacle course, without experiencing severe pain.

At the end of the 1992 season, William Haviluk, the General Manager of the Six Flags in Eureka reviewed the park's operating results and decided to engage in a reduction-in-force (RIF) at the park.  Haviluk implemented layoffs which affected several of the park's departments.  He directed Mike Chilovich, the Manager of Security, to reorganize the Security Department.  It was decided that three security positions (two sergeants and one officer) would be eliminated as part of the RIF.  In October 1992, after evaluating the officers and sergeants under his supervision, Chilovich concluded that Aucutt would be terminated. Chilovich Aff. ¶ 12.  According to Chilovich, Aucutt was selected because of his low productivity and abrasive, "militaristic" attitude towards park patrons.  For example, on one occasion Aucutt had made patrons perform push-ups in the parking lot; he had also conducted several unauthorized searches of patrons' vehicles for liquor.  Chilovich Aff. ¶ 7-8.  Although Chilovich had not personally observed these incidents, he did counsel Aucutt about his negative attitude at work.  In February 1992, Chilovich specifically informed Aucutt that a failure to improve his work attitude would result in termination.  Chilovich Aff. ¶ 11.  However, according to Six Flags, Aucutt continued to demonstrate an abrasive demeanor while on duty.

When Chilovich recommended Aucutt for layoff in October 1992 as part of the RIF, Haviluk concurred.  At the time of his layoff, Aucutt was 44 years old and the oldest uniformed security officer at the park.  Eight months later, following the termination of another uniformed security officer, a long-term Six Flags employee below the age of 40 was transferred into the Security Department as a uniformed security officer.

After exhausting his administrative remedies, Aucutt instituted the present action on September 24, 1993, in the United States District Court for the Eastern District of Missouri, alleging his layoff was discriminatorily based upon his age and his medical conditions, in violation of the ADEA and ADA, respectively.  On December 6, 1994, upon motion by Six Flags, the district court entered summary judgment in favor of Six Flags, holding that Aucutt had failed to establish a prima facie case of discrimination under either the ADEA or the ADA.  Further, the district court found that even if Aucutt had established a prima facie case of age discrimination, he had failed to rebut the legitimate, nondiscriminatory reasons for his layoff articulated by Six Flags.  Slip op. at 12-13, 19.  This timely appeal followed.

## II.  Discussion

### A.    Standard of Review

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992); St. Paul Fire & Marine Insurance Co. v. FDIC, 968 F.2d 695, 699 (8th Cir. 1992).  Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

**B.    ADEA Claim**

On appeal, Aucutt contends that the district court erred in granting summary judgment in favor of Six Flags on his ADEA claim  for three reasons.  First, he argues the district court failed to apply the proper standard for determining whether a motion for summary judgment should be granted.  According to Aucutt, the district court neither viewed the facts in the light most favorable to him as the non-movant, nor resolved evidentiary conflicts in his favor.  Second, Aucutt argues the district court erroneously concluded that he had failed to establish a prima facie case of age discrimination in violation of the ADEA or, alternatively, that he had failed to rebut the legitimate, nondiscriminatory reason for his layoff articulated by Six Flags.  Finally, Aucutt maintains that statements in Chilovich's affidavit describing Six Flags' nondiscriminatory reason for its selection of Aucutt for discharge were improperly credited by the district court, because these statements were not based on Chilovich's personal knowledge, as required by Fed. R. Civ. P. 56(e).  We consider each argument in turn.

1.    Standard of Review Employed by District Court

Aucutt first argues that the district court, in considering Six Flags' motion for summary judgment, failed to review the facts in a light most favorable to him, the party opposing the motion, and give him the benefit of all reasonable inferences supported by the facts.  See Didier v. J.C. Penney Co., 868 F.2d 276, 279-80 (8th Cir. 1989).  More particularly, Aucutt contends that the district court, in considering his performance evaluations, gave undue weight to the portions describing his "negative, militaristic" attitude but failed to give sufficient weight to the portions stating that he had "made progress as a security officer." Appellant's Add. 11; Joint App. 65.  He also maintains that the district court improperly disregarded the statements allegedly made

-5-

by Robertson and Hendricks in July 1991 as evidence of age-based discriminatory animus.

Plaintiff's arguments are without merit. Although the district court was required to consider all facts in the light most favorable to Aucutt, it was not required to ignore undisputed evidence in the record indicating that Aucutt had repeatedly demonstrated a hostile attitude towards park patrons.

Similarly, the district court properly disregarded the statements allegedly made by Robertson and Hendricks, in light of the principles set forth in Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991) (Beshears). In Beshears, we distinguished between "[c]omments which demonstrate a 'discriminatory animus in the decisional process'" from "'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process.'" Id. (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)); Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993) (Radabaugh) (documents authored by company president emphasizing young age of managers as one of company's strengths constituted evidence of age-based discriminatory animus). In the present case, the alleged remarks of Robertson and Hendricks were made fourteen months before Aucutt's termination, and neither Robertson nor Hendricks was involved in the decision to terminate Aucutt in October 1992. Moreover, these statements do not evince any discriminatory animus with respect to age. Thus, even if made, these statements constitute "stray remarks in the workplace [or] statements by nondecisionmakers" and were therefore properly disregarded by the district court. Beshears, 930 F.2d at 1354. We therefore hold that the district court properly applied the summary judgment standard in the present case.

2.    Merits of ADEA Claim

Aucutt next contends that the district court erred in determining that he had failed to present a prima facie case of age discrimination in violation of the ADEA[2] or, alternatively, that he had failed to show that the legitimate reason for his discharge articulated by Six Flags was a pretext for age discrimination. See slip op. at 12-13.  We disagree.

The burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), for Title VII discrimination cases also governs age discrimination claims under the ADEA.  Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1164 (8th Cir. 1984) (Holley).  The plaintiff must first establish a prima facie case of age discrimination.  In order to establish a prima facie case, an age-discrimination plaintiff such as Aucutt, who was dismissed pursuant to a RIF, must show that: (1) he or she was at least 40 years old at the time of discharge; (2) he or she satisfied the applicable job qualifications; (3) he or she was discharged; and (4) "provide some additional showing that age was a factor in the termination."  Nitschke v. McDonnell Douglas Corp., 68 F.3d 249, 251 (8th Cir. 1995) (Nitschke) (quoting Holley, 771 F.2d at 1165).  If the plaintiff establishes a prima facie case, the employer has the burden of producing evidence that the plaintiff was discharged "for a legitimate, nondiscriminatory reason."  St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742, 2747 (1993) (quoting Texas Dep't of Community Affairs v. Burdine, 450

_____

[2]The ADEA provides, inter alia, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ." 29 U.S.C. § 623(1).

-7-

U.S. 248, 254 (1981)).  The burden then shifts to the plaintiff to prove that the reason articulated by the employer was a pretext for

age-based discrimination. <u>Nitschke</u>, 68 F.3d at 251; <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771, 777 (8th Cir. 1995).

We will assume for purposes of this appeal that Aucutt has established a prima facie case of age discrimination. Even granting him this assumption, the district court properly entered summary judgment in favor of Six Flags on the issue of pretext. Six Flags submits that it discharged Aucutt pursuant to a RIF caused by a decline in business in the 1992 season. According to Chilovich, the Manager of Security at the Six Flags in Eureka, Aucutt was selected for termination because of his failure to correct his negative work attitude after repeated admonitions, including a corrective counseling session in February 1992. Chilovich Aff. ¶ 12. Noting that Aucutt had conducted unauthorized searches of patrons' cars in the parking lot, had made park guests perform "push-ups" on at least one occasion, and had often criticized Six Flags' procedures, Chilovich stated that he had recommended Aucutt for termination, and the General Manager had agreed, because Aucutt's behavior was inconsistent with the company's public relations and safety policies. Chilovich Aff. ¶¶ 7, 12.

Because Six Flags presented a legitimate, nondiscriminatory reason for Aucutt's termination, the burden shifted to Aucutt to demonstrate the existence of a factual issue as to whether this explanation was a pretext for age-based discrimination. Although Aucutt questions Chilovich's personal knowledge of the "push up" incident,[3] he does not deny having engaged in any of the "militaristic" conduct described by Chilovich. Rather, he merely alleges pretext on the basis that Six Flags retained two younger security officers who had inferior job performance evaluations. Yet

_____

[3]This argument is considered separately below.

-9-

we note that these officers were only ranked below Aucutt in one category; nor did they demonstrate the negative work attitude for

which Aucutt had often been admonished.  More importantly, however, Aucutt has not presented any evidence that Six Flags harbored age-based discriminatory animus.  This court may not second-guess an employer's personnel decisions, unless such decisions are based upon unlawful discrimination.  See Walker v. AT & T Technologies, 995 F.2d 846, 850 (8th Cir. 1993).  Upon careful de novo review, we hold that the district court correctly determined that Aucutt has not presented sufficient evidence to create a genuine issue of material fact that Six Flags' articulated reason for his discharge was a pretext for age-based discrimination.

### 3.   The Chilovich Affidavit

Aucutt contends that the district court erred in crediting the reasons for his termination given by Chilovich in his affidavit. Noting that Fed. R. Civ. P. 56(e) requires that affidavits supporting motions for summary judgment be made on personal knowledge, Aucutt argues that Chilovich's affidavit does not meet this requirement because Chilovich lacked personal knowledge of the "push-up" incident described in his affidavit.  Chilovich made the following statement in paragraph eight of his affidavit:

> It came to my attention that while patrolling the parking lot, Michael Aucutt encountered four young guests in military uniforms.  It also came to my attention that after concluding that they had violated a rule, he informed them that he was a former Army Sergeant, he had the authority to discipline them as their military superior, and then commenced giving orders to perform calisthenic "push-ups", (which the guests then did), in the Six Flags parking lot.

Chilovich Aff. ¶ 8. Chilovich recounted the "push-up" incident as one of several examples of Aucutt's failure to improve his hostile demeanor towards park patrons, which was the primary reason why he was selected for layoff in the October 1992 RIF. Aucutt contends

that because Chilovich did not personally observe the "push-up" incident described in the affidavit, the district court improperly considered the affidavit in deciding to grant summary judgment in favor of Six Flags.

Six Flags responds that Chilovich's affidavit comports with Fed. R. Civ. P. 56(e), because it was based on Chilovich's personal knowledge of the reasons for the decision to lay off Aucutt. We agree. Fed. R. Civ. P. 56(e) requires that affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). In evaluating evidence related to possible summary judgment, a court may not consider affidavits that do not satisfy the requirements of Fed. R. Civ. P. 56(e). See El Deeb v. University of Minnesota, 60 F.3d 423, 428-29 (8th Cir. 1995); Cummings v. Roberts, 628 F.2d 1065, 1068 (8th Cir. 1980). The district court in the present case properly considered Chilovich's affidavit, because it was based on Chilovich's personal knowledge of the reasons underlying the challenged employment decision. As the Manager of the Security Department, Chilovich was directed to select two sergeants and one officer to be laid off as part of the October 1992 RIF. He evaluated the personnel file and performance of each employee under his supervision and decided to lay off Aucutt. In his affidavit, Chilovich indicated that he had repeatedly admonished Aucutt to improve his demeanor towards park guests while performing his security duties, yet Aucutt had failed to do so. For example, Chilovich stated, "Even after I reminded Aucutt several times not to conduct vehicle searches, I still found him in the parking lot searching vehicles." Chilovich Aff. ¶ 7. He further stated that he chose Aucutt for termination because Aucutt had "continued to demonstrate a negative attitude and an

unwillingness to cooperate with Six Flags' policies and goals. . . ." Chilovich Aff. ¶ 12. Thus, Chilovich had firsthand

knowledge of the reasons why Aucutt was selected for discharge. Fed. R. Civ. P. 56(e) does not require Chilovich to have witnessed every incident supporting the termination decision, so long as he had personal knowledge that the decision was for reasons unrelated to age-based discrimination.  Cf. Gill v. Reorganized School Dist., 32 F.3d 376, 379 (8th Cir. 1994) (school superintendent who discharged plaintiff teacher after receiving report that student had accused plaintiff of making racially derogatory remarks satisfactorily rebutted plaintiff's prima facie case with a legitimate reason for plaintiff's discharge; superintendent need not have observed incident in question, because crucial issue was "whether [the reported incident] was the real reason for [Gill's] termination and not a pretext for [race] discrimination").

In light of the foregoing, we hold that the district court did not err in considering Chilovich's affidavit in support of Six Flags's motion for summary judgment.  We further hold that the district court properly entered summary judgment in favor of Six Flags on Aucutt's ADEA claim.

## C.    ADA Claim

Finally, Aucutt challenges the district court's granting summary judgment in favor of Six Flags on his ADA claim.[4]  The district court concluded that Aucutt had not established a prima facie case of disability discrimination, because he had failed to show that he suffered from a "disability" within the meaning of the

---

[4]The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

ADA.  Slip op. at 19.  A plaintiff may use the <u>McDonnell Douglas Corp. v. Green</u> burden-shifting framework described above to prove

a claim of intentional disability discrimination.  See Price v. S-B Power Tool, 75 F.3d 362, 364-65 (8th Cir. 1996), *petition for cert. filed*, 64 U.S.L.W. 3765 (U.S. Apr. 29, 1996) (No. 95-1782).  To establish a prima facie case under the ADA, a plaintiff must show that: (1) he or she is a "disabled" person within the meaning of the ADA; (2) he or she is qualified to perform the essential functions of the job (either with or without reasonable accommodation); and (3) he or she has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises.  See id. (citing Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995)).  In order to establish a prima facie case in a RIF situation, the plaintiff must also show that his or her disability was a determining factor in his or her termination.  See Johnson v. Minnesota Historical Soc'y, 931 F.2d 1239, 1243 (8th Cir. 1991).

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or being regarded as having such an impairment."  42 U.S.C. § 12102(2)(A)-(C).  It is undisputed that Aucutt suffers from angina, high blood pressure, and coronary artery disease.  The district court held that Aucutt was not "disabled" within the meaning of the ADA, because he had presented no evidence suggesting that his medical problems "substantially limit[ed]" one or more of his "major life activities." Slip op. at 19.  Emphasizing that he could not complete the "streams course" without experiencing severe pain, Aucutt argues that his medical problems constitute "disabilit[ies]" as defined in 42 U.S.C. § 12102(2)(A).  Alternatively, he contends that because Six Flags was aware of his medical problems, his difficulty performing the streams course, and his requests for an air-conditioned vehicle, he was "regarded" as

having an impairment which substantially limited one or more of his major life activities.  42 U.S.C. § 12102(2)(C).  We think Aucutt's arguments are without merit.

Because the ADA does not define the term "major life activities," we are guided by the definition provided in 29 C.F.R. § 1630.2, the Equal Employment Opportunity Commission (EEOC) regulations issued to implement Title I of the ADA. See 42 U.S.C. § 12116 (requiring EEOC to issue regulations implementing ADA). As defined in 29 C.F.R. § 1630.2(i), the phrase "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing learning, and working." 29 C.F.R. § 1630.2(i). The regulations further provide that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Rather, a person claiming a disability must show that the impairment "significantly restrict[s] [his or her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Id; see also Bolton v. Scrivner, Inc., 36 F.3d 939, 942-44 (10th Cir. 1994) (Bolton) (work-related injury preventing employee from performing his job as order selector in grocery warehouse was not substantial limitation in major life activity of working, as required for unlawful discharge claim under ADA, absent evidence showing restriction in ability to perform class of jobs or broad range of jobs in various classes), cert. denied, 115 S. Ct. 1104 (1995). Finally, the EEOC regulations state that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment, (ii) its duration or expected duration, and (iii) its actual or expected long-term impact. 29 C.F.R. § 1630.2(j)(2).

Aucutt has not presented any evidence indicating that his angina, high blood pressure, and coronary artery disease place a significant restriction on his ability to perform any of the basic

functions enumerated in 29 C.F.R. § 1630.2(i).  His difficulty completing the "streams course" hardly constitutes the requisite

showing that his medical condition substantially limited his overall employment opportunities. See Bolton, 36 F.3d at 943. We note, for example, that a 25-pound lifting restriction was the only medical limitation placed upon Aucutt's activities after his hospitalization in July 1991. Nor has Aucutt attempted to show that his angina, high blood pressure, and coronary artery disease pose a significant restriction on his ability to carry out other major life activities, such as walking, seeing, speaking, breathing, or learning. See 29 C.F.R. § 1630.2(i). In short, Aucutt has failed to present sufficient evidence to establish that the nature, duration, and long-term impact of his medical problems caused him to be substantially limited in a major life activity. Therefore, we hold that he is not "disabled" within the meaning of 42 U.S.C. § 12102(2)(A).

Also without merit is Aucutt's claim that he is disabled under 42 U.S.C. § 12102(2)(C) because Six Flags regarded him as having an impairment which substantially limited one or more of his major life activities. In support of this argument, Aucutt notes that Six Flags was aware of his medical problems, his inability to perform the "streams course," and his requests for an air-conditioned vehicle during the summer months. The mere fact that Six Flags had such knowledge, however, does not show that Six Flags regarded Aucutt as having a disabling impairment. We are again guided by the applicable EEOC regulations, which provide as follows:

> (l) *Is regarded as having such an impairment* means:
>
> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life

activities only as a result of the
attitudes of others toward such
impairment; or

　　　(3) Has none of the impairments
defined . . . [above] but is treated by
a covered entity as having a
substantially limiting impairment.

29 C.F.R. § 1630.2(l)(1)-(3). Aucutt has not brought forth any evidence suggesting that Six Flags perceived or treated him as having a substantially limiting impairment. In the absence of such evidence, the fact that Six Flags was aware of his medical problems is insufficient to establish that Six Flags "regarded" him as disabled under 42 U.S.C. § 12102(2). Thus, we hold that Aucutt failed to make a prima facie case of disability discrimination.

## III.  Conclusion

After carefully reviewing the record, we hold that the district court did not err in granting summary judgment in favor of Six Flags on Aucutt's ADEA and ADA claims. Accordingly, the judgment of the district court is affirmed.

A true copy.

　　Attest:

　　　　CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-23-