# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3671

_____

|  |  |  |
|---|---|---|
| Joseph T. Wild, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Minntech Corp., a Minnesota | * | |
| corporation, doing business as | * | [UNPUBLISHED] |
| Minntech, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: June 17, 1999
Filed: August 13, 1999

_____

Before RICHARD S. ARNOLD, BRIGHT, and ROSS, Circuit Judges.

_____

PER CURIAM.

Plaintiff Appellant Joseph Wild appeals the district court's grant of summary judgment[1] on all counts of his complaint in favor of his former employer Minntech Corporation ("Minntech"). Wild claims two grounds for relief. First, Wild asserts that he was terminated because of his disability, a back injury and depression, in violation of the Americans with Disabilities Act ("ADA"), and the Minnesota Human Rights Act

---

[1]Summary judgment was entered at the direction of the Honorable Michael J. Davis, United States District Judge.

("MHRA"). Second, he contends that Minntech discharged him in retaliation for filing a workers' compensation claim, in violation of Minn. Stat. § 176.82.[2] We reject these claims, and affirm.

## I.

Minntech terminated Wild in January 1993, for failing to follow the proper procedures in packaging a product manufactured by Minntech. Claiming that Minntech had discriminated against him, Wild filed a claim with the Equal Employment Opportunity Commission. After receiving a right to sue letter, Wild brought suit in federal district court for discrimination on the basis of his back injury and depression, and for retaliation for filing a workers' compensation claim. The district court granted summary judgment on each of Wild's claims, determining that Wild's assertion of disability under the ADA or the MHRA was not supported by the undisputed facts in the record. The district court also concluded that an express release in a settlement agreement between Wild and Minntech barred his workers' compensation retaliation claim.

## II.

On appeal, Wild first challenges the district court's decision to dismiss his ADA and MHRA claims. A plaintiff seeking relief under the ADA must establish that he or she (1) is disabled within the meaning of the Act; (2) is qualified to perform the essential functions of his job; and (3) was terminated because of the disability. See Aucutt v. Six Flags over Mid-America, Inc., 85 F.3d 1311, 1318 (8th Cir. 1996); 42

---

[2]Section 176.82 prohibits retaliation against persons who file workers' compensation claims.

U.S.C. § 12112(a). The district court held that Wild failed to demonstrate that his back injury and depression constituted a disability, thus ending its analysis at the first step of the prima facie case. The court predicated its decision on the fact that although Wild produced evidence of his back injury and depression, he did not demonstrate that these injuries "substantially limit[ed] one or more of [Wild's] major life activities . . . ." 42 U.S.C. § 12102(2)(A).

In response, Wild relies on competent record evidence chronicling his back injury and depression, which he insists falls within the definition of a disability under the ADA.[3] An individual is substantially limited in his work under the ADA if the injury "significantly restrict[s]" the individual's "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." Murphy v. United Parcel Service, Inc., --- U.S. ---, 119 S.Ct. 2133, 2138 (1999) (quoting 29 C.F.R. § 1630.2(j)(3)(i) (1998)). The Supreme Court has construed this regulation to require that a successful ADA plaintiff show that he or she cannot perform a class of jobs. See id. at ---, 119 S.Ct. at 2138; see also Aucutt, 85 F.3d at 1319 (holding that deficient performance on a physical test for one security guard employer did not demonstrate that the plaintiff was substantially limited in working as a security guard generally); Wooten v. Farmland Foods, 58 F.3d 382, 386 (8th Cir. 1995) (holding that plaintiff's impairments, which prevented him from performing a narrow range of meat packing jobs, did not qualify as a substantial limitation).

Examining this precedent and other relevant case law, Wild cannot demonstrate that a weight restriction of 40-50 pounds and a work-week restriction of 45 hours per

---

[3]As a result of his back injury, which qualifies as a 7% disability, Wild's doctor restricted him to a 45-hour work week and limited his lifting to a maximum weight of 40-50 pounds.

week limit his ability to perform a class of jobs. See Snow v. Ridgeview Medical Ctr., 128 F.3d 1201, 1207 (8th Cir. 1997) (holding that a lifting restriction alone does not create a triable dispute regarding a substantial limitation on a major life activity); Rogers v. Int'l Marine Terminals, Inc., 87 F.3d 755, 759 (5th Cir. 1996) (holding that 13% partial permanent disability does not constitute a substantial limitation). Although Wild asserted that back pain affected his ability to lift, sit, stand, sleep, walk and run, Wild's conclusory allegations of disability do not overcome the undisputed medical evidence of his ability to lift up to fifty pounds and to work a 45-hour work week.[4]

Wild further argues that he is disabled within the meaning of the ADA because Minntech regarded him as having an impairment which substantially limited one or more of his major life activities, including the major life activity of working. See Sutton v. United Airlines, Inc., --- U.S. ---, 119 S.Ct. 2139, 2150 (1999) (holding that a person is "regarded as" disabled if "a covered entity mistakenly believes that [a person's] actual, nonlimiting impairment substantially limits one or more major life activities."). In support of this argument, Wild contends that Minntech knew of his disability and, yet, the company transferred him to the "powder room," where he was required to perform repetitive tasks further aggravating his back condition.[5] Minntech management also attempted to remove his 45-hour work week restriction and accused Wild of fabricating his injury. The district court determined that Minntech's actions -- transferring him to the powder room and attempting to remove his restriction on overtime work -- demonstrate that Minntech actually believed that Wild did not have a disability, not that he had a disability. We find this reasoning to be persuasive.

---

[4]Wild's deposition testimony demonstrates that he remains quite active despite his back injury: Wild continues to fell trees, move and stack logs, fish, travel, work in his yard, camp out in a tent, and work out at a health club. App. at 568-571, 578-581.

[5]Although the repetitive tasks in the powder room may have continued to aggravate his back injury, Wild's new responsibilities were far less strenuous than those required of him in his former position.

Minntech's actions, as alleged by Wild, undercut his contention that Minntech regarded him as disabled.

III.

Wild's next contention of error relates to the district court's dismissal of his retaliation claim brought under Minn. Stat. § 176.82. The district court dismissed this claim on the basis of the language of a 1994 settlement agreement ("Settlement Stipulation") between Wild and Minntech. The Settlement Stipulation released Minntech and its insurer from all claims under the Minnesota Workers' Compensation Act in exchange for a lump sum payment of $54,632.61. In examining the validity of a release, Minnesota courts consider the following factors:

> (a) The length of period between the injury and the settlement; (b) the amount of time elapsed between the settlement and the attempt to avoid the settlement; (c) the presence or absence of independent medical advice of plaintiff's own choice before and at the time of the settlement; (d) the presence or absence of legal counsel of plaintiff's own choice before and at the time of the settlement; (e) the language of the release itself; (f) the adequacy of consideration; (g) the competence of the releasor; and (h) whether the injury complained of by the releasor was an unknown injury at the time of the signing of the release or merely a consequence flowing from a known injury.

Karnes v. Quality Pork Processors, 532 N.W.2d 560, 562 (Minn. 1995) (citations omitted) (quoting Schmidt v. Smith, 216 N.W.2d 669, 673 (Minn. 1974)).

We begin with the language of the Settlement Stipulation. See Sorensen v. Coast-to-Coast Stores (Cent. Org.), Inc., 353 N.W.2d 666, 670 (Minn.Ct.App. 1984)

(holding that Minnesota law "presumes that parties to a release agreement intend what is expressed in a signed writing."). The Settlement Stipulation provided that it constituted a "full, final and complete settlement" of all Workers' Compensation claims "includ[ing] . . . actions pursuant to M.S.A. § 176.82." App. at 610, 613-614. The plain language of the Settlement Stipulation, therefore, demonstrates that Wild expressly released Minntech and its insurer from any liability under Minn. Stat. § 176.82 for retaliation. See Sorenson, 353 N.W.2d at 669 ("A valid release is a defense to any action on the claims released.").

Examination of the other relevant factors also supports Minntech's position: Wild retained counsel to represent his interests in negotiating the settlement; he received a lump sum payment of $54,632.61 in consideration for his release; the timing of the release does not suggest undue influence or duress;[6] Wild knew of his injury when he executed the release; and, finally, he neither alleges, nor do we find any evidence to support, that Wild was incompetent at any relevant time during these proceedings. Thus, after a thorough review of the record, we conclude that Wild voluntarily released his retaliation claim, and that the Settlement Stipulation constitutes a valid and enforceable agreement. See Karnes, 532 N.W.2d at 562 (holding that a "release is governed not by the Workers' Compensation Act but by the rules of contract construction"). Because Wild has not shown any grounds for invalidating the Settlement Stipulation, this claim on appeal must fail.

Accordingly, we affirm the district court's well reasoned opinion.

---

[6]Wild injured his back in May 1991, and the parties reached settlement in November 1994. In addition, more than one year elapsed from the initial offer to Wild by Minntech's insurer until the parties reached final agreement on the settlement. Moreover, Wild himself re-initiated the negotiations in November 1994, after the parties became deadlocked in late 1993.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.