[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 14 2000
THOMAS K. KAHN
CLERK

-----------------------
No. 98-6982
-----------------------
D. C. Docket No. 96-02462-CV-ARM-M

WILLIAM BRUCE REED,

Plaintiff-Appellant,

versus

THE HEIL COMPANY,

Defendant-Appellee.

-----------------------
Appeal from the United States District Court
for the Northern District of Alabama
-----------------------

**(March 14, 2000)**

Before DUBINA, Circuit Judge, KRAVITCH, Senior Circuit Judge, and
NESBITT*, Senior District Judge.

KRAVITCH, Senior Circuit Judge:

---

*Honorable Lenore C. Nesbitt, Senior U.S. District Judge for the Southern District of Florida,
sitting by designation.

This appeal involves the limits on federal jurisdiction imposed by 28 U.S.C. § 1445(c)[1] and the proper interpretation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (1999). Plaintiff-Appellant Reed suffered a back injury while working at the Heil Company (Heil), the Defendant and Appellee. During the ensuing two years Reed performed light duty work, but Heil then terminated his employment. Reed brought suit in Alabama state court alleging that his termination constituted a breach of contract and violated both an Alabama statute barring retaliation against employees who file workers' compensation claims, see Ala. Code § 25-5-11.1, and the ADA. Heil removed the case to federal court, which granted summary judgment for the Defendant-Appellee on all claims. Reed appeals the grant of summary judgment for Heil on the retaliatory discharge and ADA claims.

A federal statute, 28 U.S.C. § 1445(c), bars the removal to federal court of claims arising under state workers' compensation laws. Because we conclude that claims brought pursuant to Alabama's statute barring retaliation for the filing of workers' compensation claims do arise under that state's workers' compensation laws, the district court lacked jurisdiction to entertain Reed's retaliatory discharge

---

[1] 28 U.S.C. § 1445(c) states: "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."

claim. Reed's ADA claim, however, was properly before the district court. Summary judgment for the defendant on this claim was appropriate because Reed did not establish one of the elements of a *prima facie* case under the ADA, namely that he was a "qualified individual," able to perform the essential tasks of any available job at Heil with or without reasonable accommodation.

## I. BACKGROUND

Reed began work as a welder at Heil, a garbage truck manufacturer, in May 1993. Reed's job involved heavy lifting and a wide range of bodily motion, such as frequent crouching, reaching, and bending. In July 1993 Reed was injured carrying a seventy-five pound sheet of steel.

Dr. Decker, the company doctor, initially advised Reed that he would have to limit himself to light duty until further notice, and he notified Heil that Reed should avoid repetitive motion, stretching, and heavy lifting. In September 1993, Dr. Decker reiterated that Reed should avoid repetitive motion, stretching, and lifting more than fifty pounds. Two neurosurgeons, Drs. Hrynkiw and Denton, diagnosed a pars defect and spondylolysis, abnormalities of the vertebrae. Dr. Denton determined that Reed should not perform heavy manual labor. Dr. Hrynkiw formally assessed Reed as having a five-percent permanent disability and

3

also restricted Reed to work requiring light or medium levels of physical exertion with no bending or twisting, and no standing or sitting for lengthy periods of time.

For almost two years, Heil gave Reed work through a "light duty" program designed to accommodate employees recovering from injury. For the first nine months, Reed ran errands and did a variety of office work. Beginning in May 1994, Reed worked in the pre-delivery department. He inspected truck chassis, did paper work, and assisted the one permanent, non-supervisory employee in the pre-delivery department. That employee greased the numerous fittings on the garbage trucks, cleaned the trucks, and then moved them out of the department. Reed could not do some of the work this job entailed because it required climbing into, on top of, and underneath the trucks, and greasing fittings in hard to reach places.

At the end of May 1995, Heil eliminated the light duty program and terminated Reed. Heil claims it eliminated the light duty program because there was not enough work for participants and because some injured employees were permanently unable to return to their former jobs.

Heil claims to have evaluated the physical requirements for every position at the factory and further asserts that Reed's physical restrictions rendered him unqualified for any of the vacancies that arose the year after his termination. Reed

4

believes that he can perform a number of office jobs at Heil, as well as jobs on the factory floor and in the pre-delivery department, perhaps even his previous welding position. Reed was never medically cleared to return to his previous duties, however, and he was still on light duty when laid off in 1995.

In June 1995, Reed filed for workers' compensation benefits. In September 1996 he filed a complaint against Heil in state court, alleging a violation of the ADA and state law claims, including retaliatory discharge in violation of Alabama Code § 25-5-11.1. Heil removed the case to federal court on the basis of subject matter jurisdiction over the ADA claim and possibly diversity of citizenship as well. Reed tried unsuccessfully to have the case remanded to state court. The district court, adopting a magistrate judge's findings and recommendations, granted summary judgment to the defendant on all claims.

## II. DISCUSSION

Reed challenges the district court's disposition of both his retaliatory discharge and ADA claims. First, Reed argues the district court lacked jurisdiction over his retaliatory discharge claim because it falls within the ambit of 28 U.S.C. § 1445(c), a federal statute that bars the removal of claims arising under state workers' compensation laws. Second, he challenges the district court's

interpretation of the requirement under Alabama law that the plaintiff be willing and able to return to work in order to make out a retaliatory discharge claim. Finally, Reed claims that he is disabled within the meaning of the ADA and that he presented enough evidence of his ability to perform several jobs at Heil to reach a jury.

**A. The Retaliatory Discharge Claim**

Reed argues the federal courts do not have subject matter jurisdiction to consider his claim that Heil discharged him in retaliation for filing a workers' compensation claim. Reed filed suit in the Circuit Court of DeKalb County, Alabama, but Heil removed the case to federal court. Defendants can remove civil actions over which the federal courts would have had original jurisdiction. See 28 U.S.C. § 1441(a). The federal district court would have had original jurisdiction over Reed's ADA claim because it arose under federal law. See 28 U.S.C. § 1331. In addition, federal courts can exercise supplemental jurisdiction over state law claims that form part of the same case or controversy as the claim with original federal jurisdiction. See 28 U.S.C. § 1367(a); see also 28 U.S.C. § 1441(c).

A few actions, however, cannot be removed from state to federal court. Specifically, 28 U.S.C. § 1445(c) bars the removal of claims from state court

"arising under the workmen's compensation laws" of the forum state. Thus, we must decide whether Reed's retaliatory discharge claim, brought pursuant to section 25-5-11.1 of the Alabama Code, "arises under the workmen's compensation laws" for the purposes of section 1445(c). This question has divided the district courts of Alabama,[2] but it is a matter of first impression for this circuit.

Alabama's proscription of retaliatory discharges is codified as part of its workers' compensation provisions. See generally Ala. Code. § 25-5 (1999). Alabama courts have construed a general release of claims related to a workplace injury to bar a subsequent retaliatory discharge action. See Ex parte Aratex Servs., Inc., 622 So. 2d 367, 369 (Ala. 1993). The Alabama Supreme Court has described the purpose of section 25-5-11.1 as to ensure that employees are "able to exercise [their] right to be compensated for work-related injuries in an unfettered fashion without being subject to reprisal." McClain v. Birmingham Coca-Cola Bottling Co., 578 So. 2d 1299, 1301 (Ala. 1991). This, the court reasoned, was necessary "[i]n order for the beneficent goals of the worker's compensation chapter to be realized." Id. Otherwise, the threat of losing one's job would discourage workers from filing injury compensation claims. See id.

---

[2] Compare, e.g., Roberts v. Beaulieu of Am., Inc., 950 F. Supp. 1509 (N.D. Ala. 1996) (section 25-5-11.1 actions arise under Alabama's workers' compensation laws for section 1445(c) purposes), with Moreland v. Gold Kist, Inc. 908 F. Supp. 898 (N.D. Ala. 1995) (section 25-5-11.1 actions do not arise under Alabama's workers' compensation laws for section 1445(c) purposes).

Understanding the Alabama legislature's intentions and the state court's treatment of the retaliatory discharge cause of action is helpful; the Alabama courts and legislature, however, cannot decide for us whether the retaliatory discharge provision arises under the workers' compensation laws within the meaning of section 1445(c). Because section 1445 is a federal jurisdiction statute with nationwide application, federal law governs its interpretation. See Grubbs v. General Electric Credit Corp., 405 U.S. 699, 705, 92 S. Ct. 1344, 1349 (1972); Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1245 (8th Cir. 1995); Arthur v. E.I. DuPont de Nemours & Co., 58 F.3d 121, 125 (4th Cir. 1995); Jones v. Roadway Express, Inc., 931 F.2d 1086, 1092 (5th Cir. 1991).

The only two circuits that have faced this issue have held that a cause of action created by a state legislature for workers discharged because they file workers' compensation claims does indeed "arise" under a state's "workers' compensation laws" for the purposes of section 1445(c). See Humphrey, 58 F.3d at 1245-46; Jones, 931 F.2d at 1091-92. Humphrey and Jones both interpreted the words "arising under" to have the same meaning in section 1445(c) as in section 1331, which governs federal question jurisdiction.

The Jones court concluded that Texas's retaliatory discharge statute arises under the state's worker's compensation laws because it "enables injured workers

8

to exercise their rights under that scheme." 931 F.2d at 1092. The court determined that the legislature enacted the retaliatory discharge statute "to safeguard its workers' compensation scheme" and noted that "were it not for the workers' compensation laws, [the retaliatory discharge statute] would not exist." Id.

The Humphrey court followed different reasoning to reach the same conclusion. The court held that, "[u]nder the plain meaning of the statute, where a state legislature enacts a provision within its workers' compensation laws and creates a specific right of action, a civil action brought to enforce that right of action is, by definition, a civil action arising under the workers' compensation laws of that state." Humphrey, 58 F.3d at 1246. "Therefore," the court concluded, "§ 1445(c) applies." Id. In reaching this conclusion, the court rejected the notion that a tort-like claim must lie beyond section 1445(c)'s meaning of workers' compensation laws.

Cases focusing on whether *common law* causes of action "arise under" workers' compensation laws for section 1445(c) purposes are inapposite. The Seventh Circuit has held that a court-created tort remedy for employees discharged in retaliation for filing workers' compensation claims in Illinois does not arise under the state's worker's compensation laws. See Spearman v. Exxon Coal USA,

9

Inc., 16 F.3d 722 (7th Cir. 1994). The Spearman court explained that when the Illinois legislature added an anti-retaliation clause to its workers' compensation law, it chose not to create a private remedy. See id. at 724. Three years later, however, the Illinois courts acted on their own, holding that workers' compensation was one of the substantial public policies that could underlie a common law claim for wrongful termination in violation of public policy. See Kelsay v. Motorola, Inc., 384 N.E. 2d 353 (Ill. 1978). As Spearman notes, subsequent Illinois cases made clear that the wrongful termination tort claim is independent of the state workers' compensation law. See 16 F.3d at 725 (citing Rubenstein Lumber Co. v. Aetna Life & Cas. Co., 462 N.E. 2d 660, 661-62 (Ill. App. Ct. 1st Dist. 1984), and Suddeth v. Caterpillar Tractor Co., 449 N.E. 2d 203 (Ill. App. Ct. 2d Dist. 1983). In contrast to Alabama, for example, a settlement discharging an employer from all liability under the workers' compensation laws does not bar a retaliatory discharge suit. See id. (citing Suddeth, 449 N.E. 2d 203).

Similarly, the Fourth Circuit has held that an intentional tort action, brought when employers act with the deliberate intent to injure workers, does not arise under state workers' compensation laws for section 1445(c) purposes. Arthur, 58 F.3d at 125. Although West Virginia had codified the deliberate intent cause of

10

action, the Fourth Circuit determined that it "has always been considered a creature of the common law." Id. at 127. The Fourth Circuit noted that an intentional injury claim had little in common with workers' compensation claims as understood in 1958, when Congress passed section 1445(c). The court also determined that an intentional injury claim is not closely related to and does not further the overall purposes of West Virginia's workers' compensation system. Id. The court noted "the sharp distinction between a retaliatory discharge claim and [an intentional injury] claim. The action for retaliatory discharge is integrally related to the just and smooth operation of the workers' compensation system; it ensures that those seeking compensation benefits are not scared out of making claims. . . . This cause of action therefore aids the overriding purpose of providing fixed, no-fault benefits for workplace injuries." Id. at 128.

Because the causes of action at issue in Spearman and Arthur are so different from Alabama's retaliatory discharge statute, those cases have little persuasive force here. Instead, taking into account the history and operation of section 25-5-11.1 and following the guidance of Jones and Humphrey, we conclude that for the purposes of section 1445(c), Alabama's retaliatory discharge cause of action arises under that state's workers' compensation laws.

11

Section 25-5-11.1 is an integral part of Alabama's worker's compensation regime. Codified together with the remaining worker's compensation laws, it was passed to enhance the efficacy of the overall workers' compensation system. The retaliatory discharge cause of action increases workers' willingness to file compensation claims, and it limits employers' ability to discourage them. In so doing, section 25-5-11.1 encourages prompt and thorough medical attention for workplace injuries. Under the plain meaning of section 1445(c), claims raised under section 25-5-11.1 arise under Alabama's workers' compensation laws.[3]

---

[3] When interpreting statutes, courts should not "resort to the legislative history" if the statutory language is straightforward. See United States v. Gonzalez, 520 U.S. 1, 6, 117 S. ct. 1032, 1035 (1997). In this case, section 1445(c)'s language is clear, and we do not need the legislative history for interpretive guidance. Even if there were a need to look beyond the plain meaning of section 1445(c), however, the Senate Report for the statute supports our holding or is at worst ambiguous. See S. Rep. No. 1830 (1958). Congress passed section 1445(c) as part of a bill that also raised the minimum amount in controversy and imposed other restrictions on diversity jurisdiction. The "Statement" section of the report concentrates exclusively on easing the workload of the federal courts. See id. at 3100-01. The section of the report concerning the workers' compensation provisions also focuses on the increased case load caused by the removal of workers' compensation cases. See id. at 3103-06. In holding that retaliatory discharge claims in Alabama cannot be removed from state court because they arise under Alabama's workers' compensation laws, we further section 1445(c)'s apparent purpose of limiting the workload of the federal courts.

One statement in the Senate Report may indicate that Congress was thinking only of streamlined, no-fault procedures to compensate employees for work-related injuries when it passed section 1445(c). The report notes that "[n]early all of the State statutes on workmen's compensation provide summary proceedings for the expeditions [sic] and inexpensive settlement of claims by injured workmen against the employer." Id. at 3106. That is a weak foundation, however, for a narrow reading of section 1445(c). The report only provides one example, venue provisions, of state rules that could be frustrated by removal to federal court. See id. The Senate report expresses concern that litigating in a distant federal court will impose an undue burden on workers. See id. This concern, however, applies whether the worker is litigating about compensation for an injury or being fired for filing a compensation claim.

12

Pursuant to this holding, we conclude that the federal court lacks subject matter jurisdiction to entertain Reed's retaliatory discharge claim; it must be remanded to state court. Therefore, we have no occasion to reach Reed's second argument relating to his retaliatory discharge claim, that the district court misconstrued the requirement under Alabama law that plaintiffs show a willingness and ability to return to work.

## B. The Americans With Disabilities Act Claim

The Americans With Disabilities Act (ADA) provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1999). A plaintiff advancing a claim of employment discrimination under the ADA must make a *prima facie* case establishing that (1) he has a disability, (2) he is a "qualified individual," which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodation, and (3) the defendant unlawfully discriminated against him

because of the disability. See Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999).

The magistrate and district courts concluded that Reed failed to prove both that his back impairment was a disability within the meaning of the ADA and that, considering his back problems, he was qualified for any position at Heil. The district court granted summary judgment for Heil. We review the grant of summary judgment *de novo*, reviewing the record in the light most favorable to the Appellant Reed, the non-moving party. See Holbrook v. City of Alpharetta, 112 F.3d 1522, 1525-26 (11th Cir. 1997).

A physical or mental impairment qualifies as a disability under the ADA if it substantially limits a major life activity, such as working. See 42 U.S.C. § 12102(2)(A).[4] "An individual is substantially limited in working if the individual is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes, when compared with the ability of the average person with comparable qualifications to perform those same jobs." 29 C.F.R. pt. 1630 app. at 351 (1999).

---

[4] A person with a record of an impairment substantially limiting a major life activity, or who is regarded as having such an impairment, also qualifies as disabled under the ADA. See 42 U.S.C. § 12102(2)(B)-(C).

14

This court has never faced the question of whether a restriction to avoid heavy and extra heavy manual labor, or more specifically, whether a restriction to lift no more than forty-five or fifty pounds and avoid frequent bending, stretching, and twisting, fails as a matter of law to establish a disability within the meaning of the ADA. The magistrate and district courts concluded that these restrictions did not exclude Reed from a broad range of jobs. A number of circuits have reached similar conclusions, holding as a matter of law that lifting restrictions comparable to Reed's do not constitute a disability. See Thompson v. Holy Family Hosp., 121 F.3d 537, 539-40 (9th Cir. 1997) (restriction from lifting more than fifty pounds twice per day and one hundred pounds once per day not a disability); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir.1996) (twenty-five pound lifting restriction not a disability); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir.1996) (twenty-five pound lifting restriction not a disability); Ray v. Glidden Co., 85 F.3d 227, 228-29 (5th Cir.1996) (restriction allowing limited lifting of forty-four to fifty-six pounds not a disability).

One district court in this circuit has rejected the reasoning of those cases, finding that restrictions slightly more onerous than Reed's do constitute a disability. See Frix v. Florida Tile Ind., Inc., 970 F. Supp. 1027, 1034 (N.D. Ga. 1997) (restricted to lifting no more than twenty-five pounds with limited bending

15

and stooping). The Seventh Circuit has held that shoulder injury restrictions of no heavy lifting, overhead work, pulling, or pushing presented a genuine issue of material fact as to whether the plaintiff was disabled. See Cochrum v. Old Ben Coal Co., 102 F.3d 908, 911(7th Cir. 1996). The Interpretive Guidelines for the ADA support this view, providing the following example: "[A]n individual who has a back condition that prevents the individual from performing any heavy labor job would be substantially limited in the major life activity of working because the individual's impairment eliminates his or her ability to perform a class of jobs." 29 C.F.R. pt. 1630 app. at 351.

We do not have to determine whether Reed's impairment falls short of the ADA's definition of a disability as a matter of law, however, because he failed to establish that he is a "qualified individual," the second prong of the *prima facie* case.

Determining whether an individual is "qualified" for a job is a two-step process. See 29 C.F.R. pt. 1630 app. at 352-53. First, does the individual satisfy the prerequisites for the position; does the individual have sufficient experience and skills, an adequate educational background, or the appropriate licenses for the job? See id. Second, can the individual perform the essential functions of the job, either with or without reasonable accommodations? See id. The plaintiff has the

16

burden of proving that reasonable accommodations were available. See Holbrook, 112 F.3d at 1526. Reassignment is only a reasonable accommodation if a position for which the plaintiff is qualified is available. See Willis v. Conopco, Inc., 108 F.3d 282, 284 (11th Cir. 1997).

Reed did not demonstrate that he was "qualified" for any job available at Heil. Reed only provided evidence that Heil had vacancies for buyer, welder, pre-delivery, and grinder positions in the year after his termination when he had "recall rights" at the company.[5] The buyer position requires knowledge of numerous software applications as well as "[e]xcellent mathmatical [sic], analytical and communications skills."[6] A bachelor's degree in business administration was also desired.[7] Reed did not demonstrate he had any of these qualifications.[8]

---

[5] "Recall rights" refers to the priority for job openings that workers laid off from Heil enjoy for a period after their layoff. The duration of this priority period depends on how long an individual has worked at Heil. Reed's recall rights lasted a year after his termination.

[6] See R2 at tab 43 (Heil's announcement of the buyer job vacancy, provided as an appendix to Reed's Objections to Magistrate Judge's Findings and Recommendations and Motion for District Judge to Review De Novo). After conducting an analysis of the tasks performed by the buyer, plaintiff's expert Randy Mills concluded that the job required a more limited skills and educational credentials. See R5 at tab 30 (Job Analysis Narrative Report at 2 (Def. Ex. 10) (providing requirements for the buyer position)). Even Mills' report, however, lists a high school diploma as a prerequisite for the buyer position. See id.

[7] See id.

[8] See R5 at tab 30 (Brandy B. Mills, Vocational Assessment at 1-3 (May 29, 1997) (Def. Ex. 16) (describing Reed's skills, educational background, physical condition, and job history)).

Reed never received medical clearance to return to his position as a welder, never attempted to perform the tasks required for the job, and could not offer an opinion as to whether he could handle the physical requirements of the job. His lifting restrictions preclude him from carrying the type of metal sheets that caused his injury while working as a welder. Finally, Dr. Hrynkiw testified in a deposition that the lifting, bending, and stooping requirements of the welding position would be problematic given Reed's physical restrictions.[9]

The grinder position involves only a medium level of physical activity and requires no particular educational or experiential background. The job profile prepared by the Health South Sports Medicine and Rehabilitation Center, however, lists sustained bending and overhead reaching as frequent on-the-job motions; repeated stooping is also an occasional activity.[10] Reed's restrictions seem incompatible with these activities, and Dr. Hrynkiw expressed concern about Reed's ability to sustain the torso rotation and lumbar mobility in the grinder's work.[11]

---

[9] See R3 at tab 28 (Dep. of Zenko Hrynkiw, M.D. at 26-27 (Sept. 23, 1997)).

[10] See R3 at tab 28 (Chipper/Grinder Job Description 3 (Def. Ex. 2))

[11] See R3 at tab 28 (Dep. of Zenko Hrynkiw, M.D. at 30 (Sept. 23, 1997)).

Reed also failed to demonstrate that he could perform the essential tasks of the pre-delivery position advertised by Heil. The job description shows that the full-time pre-delivery worker cleans trucks, greases all the fittings on the truck body, and test drives trucks.[12] Reed was unable to reach and grease all the fittings when he worked in the pre-delivery department.[13] It is also undisputed that test-driving the garbage trucks would painfully aggravate Reed's back.[14]

Finally, Reed did not suggest, let alone prove, any reasonable accommodations that would have allowed him to perform the essential tasks of welder, grinder, buyer, or pre-delivery worker at Heil. The burden is on the plaintiff to prove by a preponderance of the evidence all elements of the *prima facie* case. See Willis, 108 F.3d at 284. Even drawing all inferences in his favor, the record evidence could not show that Reed was qualified for and able to perform any job available at Heil.

## III. CONCLUSION

---

[12] See R5 at tab 30 (Job Analysis Narrative Report (Def. Ex. 1) (providing requirements for the pre-delivery position)).

[13] See R3 at tab 28 (Second Bruce Reed Dep. at 160-62 (Mar. 12, 1997)).

[14] See id. (Second Bruce Reed Dep. at 133-36 (Mar. 12, 1997)); R5 at tab 30 (Brandy Mills Dep. at 90 (July 10, 1997)).

We REVERSE the grant of summary judgment for Heil on Reed's retaliatory discharge claim and REMAND, with instructions to the district court to remand the claim to the Circuit Court of DeKalb County, Alabama. We AFFIRM the district court's grant of summary judgment for Heil on Reed's ADA claim.