# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————————

No. 04-2404

———————————

| | | |
|---|---|---|
| Margaret Larry, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| John H. Potter, Postmaster General, | * | |
| United States Postal Service, | * | [PUBLISHED] |
| | * | |
| Appellee. | * | |

———————————

Submitted: February 16, 2005
Filed: September 30, 2005

———————————

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

———————————

HANSEN, Circuit Judge.

Margaret Larry, an African-American woman, sued John Potter, the Postmaster General of the United States. She alleged that she was discriminated against on the basis of her race and sex when her application to be transferred permanently to the post office in Clarendon, Arkansas, was denied. The district court[1] granted summary judgment to the Postmaster General, finding no evidence that the Officer In Charge's

———————————

[1] The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

proffered reason for denying the transfer request was a pretext for discrimination. Larry appeals, and for the reasons discussed below, we affirm the judgment of the district court.

I.

Larry began working for the United States Postal Service on October 24, 1998, as a Part-Time Flexible Mail Processing Clerk at the Little Rock Processing and Distribution Center. In 2001, because of the introduction of automated mail processing machines, the Little Rock facility began "excessing" approximately 100 employees, including Larry. Senior Plant Manager Brenda Baugh offered Larry a temporary detail at the Clarendon Post Office, and she began working there on July 7, 2001. Larry's work at the Clarendon Post Office was that of a Clerk/Carrier, which mostly involved driving a mail van and delivering mail.

Joe Hampton was the Postmaster of the Clarendon Post Office. After Larry began working there, Hampton was temporarily detailed to the Walnut Ridge Post Office. On August 20, 2001, Leigh Ann Hinkle, the Postmaster of the Lexa Post Office, temporarily became the Officer In Charge of the Clarendon Post Office.

Soon after Hinkle arrived, she realized that Larry had not received driver's training for the mail van. On August 23, Hinkle contacted the safety office to set up driver's training for Larry, and she was advised by the safety office not to let Larry drive the mail van in the interim. Hinkle called Larry's telephone number and left a message with Larry's mother, Zola Woods, that Larry would have to deliver mail on foot until she completed driver's training.

The first day that Larry would have had to walk the mail route was August 24. On that date, she showed up for work and sorted and cased the mail for delivery. However, rather than deliver the mail, she took annual leave for the rest of the day,

saying that she needed to move into a new apartment. The next day, August 25, Larry called in sick. On August 25, Hinkle called Larry's telephone number and left a message with Woods that Larry's temporary detail at the Clarendon Post Office was over and that she should return to the Little Rock facility on her next work day.

While the events described above were transpiring, Larry had attempted to transfer permanently to the Clarendon Post Office. On August 2, 2001, she completed a request for a permanent transfer to the Clarendon Post Office as a Clerk/Carrier. Larry listed the postal facilities in Dewitt and Stuttgart as her second and third choices. In response to the transfer request, a Human Resources Specialist, E. Jean Settles, sent various types of information about Ms. Larry to the Postmaster of the Clarendon Post Office: an evaluation of Larry by her supervisor at the Little Rock facility, Karen Gabriel, and a report of Larry's absences were mailed on August 10; Larry's official personnel file was mailed on August 27; and Larry's safety record, injury compensation record, and disciplinary record were emailed on August 8, 9, and 10, respectively. Larry's supervisor evaluation, safety record, injury compensation record, and disciplinary record were favorable. However, the report of her absences showed that she had eight unscheduled absences in the past year.

Hinkle (the temporary Officer In Charge) telephoned Hampton (Clarendon's regular Postmaster) to discuss Larry's transfer request. Hampton related that when Larry began working at the Clarendon Post Office, she told a coworker, Terry Hackleton, that she was unhappy having to deliver mail and preferred being a clerk to being a carrier. When Hampton heard this from Hackleton, he counseled Larry that mail delivery was going to be her predominant job duty, and she expressed a willingness to adapt. Hinkle told Hampton that Larry "was not working out" and that Hinkle's impression was that Larry remained dissatisfied with having to deliver mail. On September 4, Hinkle denied Larry's transfer request. Hinkle later explained that Larry's "performance and reliability did not meet [Hinkle's] expectations." First, Larry "did not impress upon [Hinkle] a willingness to do the available duties of the

Clarendon Post Office, which included carrier duties." Second, Larry "did miss work, and therefore, attendance was a factor in [Hinkle's] decision."

## II.

The district court analyzed Larry's claim under the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2] The district court granted summary judgment to the Postmaster General. Even assuming for the sake of argument that Larry had made out a prima facie case, the district court concluded that there was no evidence showing that Hinkle's proffered reason for denying Larry's request for a permanent transfer to the Clarendon Post Office was a pretext for discrimination.

We review de novo the district court's grant of summary judgment. See Al-Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1036 (8th Cir. 2005). If the evidence and the reasonable inferences therefrom, viewed in the light most favorable to Larry, show that there are no genuine issues of material fact, and that the Postmaster General was entitled to judgment as a matter of law, then summary judgment was proper. See id. "'Evidence, not contentions, avoids summary judgment.'" Id. (quoted source omitted).

An employee's excessive absenteeism is a legitimate, nondiscriminatory reason for taking an adverse employment action, see id. at 1037, as is an employee's negative work attitude, see Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1316-17 (8th Cir. 1996). The evidence in the summary judgment record supports the existence of these reasons for denying Larry's request to be transferred to Clarendon.

---

[2] The McDonnell Douglas framework remains the proper mode of analysis for summary judgment cases after Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). See Griffith v. City of Des Moines, 387 F.3d 733, 735-36 (8th Cir. 2004).

When Hinkle ended Larry's temporary detail in Clarendon and sent her back to Little Rock on August 25, Hinkle could rationally conclude that Larry was not going to be a good employee due to her attitude toward delivering mail and her history of absenteeism. After Larry learned that she would have to walk the mail route until she completed driver's training, she took leave on her next two work days rather than deliver the mail on foot. On August 24, she sorted and cased the mail for delivery but then took annual leave for the rest of the day. On August 25, she called in sick. Corroborating Hinkle's observation of Larry's behavior on August 24-25, Hinkle had the report of Larry's absences that had been mailed on August 10, which showed that Larry had eight unscheduled absences in the past year.

When Hinkle denied Larry's request for a permanent transfer to Clarendon on September 4, Hinkle had further reason to rationally conclude that Larry was not a good fit for the position at the Clarendon Post Office. By this time, Hinkle had learned from Postmaster Hampton that Larry had told Hackleton that she was unhappy having to deliver mail and preferred being a clerk to being a carrier. Coupled with her own observations of Larry, Hinkle could reasonably conclude that Larry's dissatisfaction with delivering mail had not abated after Hampton counseled her, and that Larry's unhappiness would continue to result in the type of absenteeism that took place on August 24-25 and during her eight unscheduled absences for the past year.

We agree with the district court that there is no evidence in the summary judgment record to show that Hinkle's legitimate, nondiscriminatory reason was actually a pretext for discrimination on the basis of Larry's race or sex. Although the next employee hired at the Clarendon Post Office was a white male, he was not hired by Hinkle, the decision-maker in Larry's case; he was hired after Hinkle left her temporary role as the Officer in Charge of that office. While Hinkle was the Officer in Charge, she interviewed a black female, Coletha Harris, and found her suitable for the position. The record is silent as to why Harris was not chosen to fill the position.

## III.

Accordingly, we affirm the judgment of the district court.

_____