58 F.3d 121
 Constance E. ARTHUR; Delmer Arthur, her husband; Nathaniel
Arthur, an infant child, by his natural mother and
next friend, Constance E. Arthur,
Plaintiffs-Appellants,
v.
E.I. DUPONT de NEMOURS & CO., INC., a Delaware company,
Defendant-Appellee.
 No. 94-1007.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 6, 1994.
Decided June 30, 1995.
 
 ARGUED: David Stephen Skeen, Law Offices of David S. Skeen, South Charleston, WV, for appellants. David Besserer Thomas, Spilman, Thomas & Battle, Charleston, WV, for appellee. ON BRIEF: William E. Murray, Charleston, WV, for appellants. Eric M. James, Brett J. Preston, Spilman, Thomas & Battle, Charleston, WV, for appellee.
 Before HAMILTON and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 Affirmed by published opinion. Judge MICHAEL wrote the opinion, in which Judge HAMILTON and Senior Judge PHILLIPS joined.
 OPINION
 MICHAEL, Circuit Judge:
 
 
 1
 In this intentional tort action, which comes to federal court by removal, Constance E. Arthur and her husband and son sue her former employer, E.I. du Pont de Nemours and Company (DuPont). The Arthurs appeal orders of the district court denying their motion to remand under 28 U.S.C. Sec. 1445(c) and granting DuPont's motion for summary judgment. We affirm for the reasons that follow.
 
 I.
 
 2
 Mrs. Arthur worked as a clerk at DuPont's Belle, West Virginia, chemical plant for ten years, from 1979 to 1988. The plant manufactures agricultural products, including pesticides and herbicides. Mrs. Arthur alleges that she was forced to quit work in 1988 because her health had been ruined by overexposure to toxic chemicals at the plant. Specifically, she asserts that her immune and vascular systems were overloaded by this exposure.
 
 
 3
 In February 1989, Mrs. Arthur filed an administrative claim for workers' compensation benefits, and the West Virginia Workers Compensation Commissioner awarded her permanent total disability benefits. DuPont contested this award, and our record does not reflect the final disposition of Mrs. Arthur's administrative claim.
 
 
 4
 The West Virginia Workers' Compensation Act gives covered employers a general immunity from employee suits for "damages at common law or by statute" resulting from work-related injuries. W.Va.Code (Code) Sec. 23-2-6. The immunity is lost, however, if an employer acts with "deliberate intention" to injure an employee. Id. at Sec. 23-4-2(c)(2). If the deliberate intent exception applies, the employee may file an action for damages in excess of workers' compensation benefits. Id. at Sec. 23-4-2(b). Civil actions brought under this exception are known in West Virginia as "Mandolidis suits," named after Mandolidis v. Elkins Industries, Inc., 161 W.Va. 695, 246 S.E.2d 907 (1978), a decision that liberalized the definition of "deliberate intention."
 
 
 5
 Mrs. Arthur filed a Mandolidis suit against DuPont in the Circuit Court of Kanawha County, West Virginia, in June 1990, and much procedural maneuvering ensued. The original complaint was never served. After nearly two years passed, DuPont was served with an amended complaint on March 17, 1992. In the amended complaint Mrs. Arthur's husband and infant son joined her as plaintiffs, and DuPont's plant physician, a West Virginia citizen, was added as a defendant. There were two removals to federal court (the first notice alleged fraudulent joinder of the physician) and two remands before a state court order dismissing the physician (on statute of limitations grounds) became final on February 3, 1993. One month later, on March 3, 1993, DuPont filed a third notice of removal on diversity grounds.
 
 
 6
 This appeal relates in part to the Arthurs' third motion to remand, a motion based on 28 U.S.C. Sec. 1445(c), which says, "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." The Arthurs argued that their Mandolidis action was not purely a common law tort action. Rather, they asserted that they could prove DuPont's deliberate intent to injure only by satisfying the statutory test set forth in West Virginia's Workers' Compensation Act, Code Sec. 23-4-2, as amended in 1983. Therefore, the Arthurs argued, their claim arose under workers' compensation law, and section 1445(c) barred removal. The district court disagreed. It denied the motion to remand, holding that the amended statute "merely limits the definition of deliberate intent. In no sense does the amendment eradicate the common law action itself or create a new statutory action supplanting it."[1]
 
 
 7
 After denying the Arthurs' motion to remand, the district court granted DuPont's motion for summary judgment. The court concluded that the Arthurs failed to proffer any evidence to support their claim that DuPont deliberately intended to injure Mrs. Arthur.
 
 
 8
 The Arthurs now appeal both rulings, and we review them de novo.
 
 II.
 
 9
 We turn first to whether 28 U.S.C. Sec. 1445(c) bars DuPont's removal of the Arthurs' Mandolidis suit to federal court. Again, section 1445(c) provides, "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."
 
 A.
 
 10
 Congress passed section 1445(c) in 1958, and the legislative history makes plain why Congress acted. Congress found that "[i]n a number of States the workload of the Federal courts has greatly increased because of the removal of workmen's compensation cases from the State courts to the Federal courts." S.Rep. No. 1830, reprinted in 1958 U.S.C.C.A.N. 3099, 3105. Specifically, before section 1445(c) passed, "the United States district courts in Texas, Alabama, and New Mexico [were] receiv[ing] a substantial number of [state workers' compensation] cases by removal and ... the district courts of Louisiana [were] receiv[ing] some such cases." Id. at 3136. In 1957 alone, United States district courts in Texas docketed 1,148 workers' compensation cases removed from state court. That same year fifty-five such cases were removed to federal court in New Mexico. Id. at 3105.
 
 
 11
 Why was removal of workers' compensation cases possible in Texas, New Mexico and a handful of other states? In Texas, for example, the Texas Industrial Accident Board, an administrative agency, made compensation awards for workplace injuries. Under Texas law, however, any interested party could bring a de novo action in state court to set aside the Board's administrative decision. New Mexico did not have an administrative agency to make compensation awards in the first instance. Instead, if an employer failed to pay compensation, the employee could file an action in state court. These suits in Texas, New Mexico and less than a half dozen other states were original actions, removable on diversity grounds. See generally, Annotation, State Workmen's Compensation Proceeding as Within Removal Statute, 60 A.L.R.2d 1262 (1958). Congress passed section 1445(c) to bar such removals.[2]B.
 
 
 12
 Because "the removal statutes ... are intended to have uniform nationwide application," federal law determines whether section 1445(c) bars removal of the Arthurs' Mandolidis claim. Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 705, 92 S.Ct. 1344, 1349, 31 L.Ed.2d 612 (1972). Thus, section 1445(c) "must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits" may not be removed. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104, 61 S.Ct. 868, 870, 85 L.Ed. 1214 (1941). States cannot by definition or characterization enlarge or narrow the categories of cases subject to removal. For instance, "[a] state could not prevent removal of ordinary tort cases by calling its common law of torts a 'worker's compensation law.' " Spearman v. Exxon Coal USA, Inc., 16 F.3d 722, 724 (7th Cir.1994). Likewise, a state "could not facilitate removal by calling a claim arising under its workmen's compensation laws an independent tort." Id. at 730 (Rovner, J., dissenting).
 
 
 13
 Our first job, therefore, is to ascertain what Congress meant by the term "workmen's compensation laws." Because the statute contains no definition, we must look to the ordinary meaning of the term in 1958, the year Congress passed section 1445(c). See Director, Office of Workers' Compensation Programs, Dep't of Labor v. Greenwich Collieries, --- U.S. ----, ----, 114 S.Ct. 2251, 2255, 129 L.Ed.2d 221 (1994); Spearman, 16 F.3d at 724-25.
 
 
 14
 By 1958 all states had "workmen's compensation laws" on the books. These laws created state-mandated insurance systems that provided benefits to employees for work-related injuries without regard to fault. According to the leading authorities in the 1950s, the typical state act included the following features: (1) negligence and fault of the employer and employee were immaterial to recovery, (2) common law suits against the employer were barred, (3) medical expenses were covered and cash benefits were capped at a percentage of the employee's wage, (4) an administrative agency ran the system with relaxed rules of procedure to facilitate prompt compensation,[3] and (5) state court review of agency decisions occurred on a deferential basis. See Arthur Larson, The Nature and Origins of Workmen's Compensation, 37 Cornell L.Rev. 531 (1952); Stephan A. Riesenfeld, Contemporary Trends in Compensation for Industrial Accidents, 42 Cal.L.Rev. 531 (1954); William L. Prosser, Handbook of the Law of Torts, Sec. 69 (2d ed.1955).
 
 
 15
 These authorities lead us to conclude that the ordinary (shorthand) meaning of "workmen's compensation laws" in 1958 was this: a statutorily created insurance system that allows employees to receive fixed benefits, without regard to fault, for work-related injuries.
 
 C.
 
 16
 With this background and definition to guide us, we proceed to an historical examination of the Mandolidis claim and then to whether the claim arises under workers' compensation law.
 
 
 17
 The West Virginia Workers' Compensation Act, enacted in 1913, provides employers with immunity from common law tort actions brought by their employees for work-related injuries. The Act creates an exception to this immunity for injuries caused by the "deliberate intention" of the employer. From its enactment in 1913 until its amendment in 1983, the Act's provision carving out the exception said simply:
 
 
 18
 If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.
 
 
 19
 Code Sec. 23-4-2 (1978) (emphasis added).
 
 
 20
 Until 1978 the "deliberate intention" exception was construed narrowly by the Supreme Court of Appeals of West Virginia: an injured employee had "to show that work related injuries were inflicted purposefully, willfully, and with a specific intent" before the employer lost immunity from suit. David O. Schles, Note, Mayles v. Shoney's, Inc.: Comment on Recent Developments in Mandolidis Actions, 94 W.Va.L.Rev. 835, 837-38 (1992). "Neither gross negligence nor wanton misconduct [was] such as to constitute injury by deliberate intention under the immunizing statute." Eisnaugle v. Booth, 159 W.Va. 779, 226 S.E.2d 259, 261 (1976).
 
 
 21
 In 1978 the Supreme Court of Appeals of West Virginia handed down Mandolidis v. Elkins Industries, Inc., 161 W.Va. 695, 246 S.E.2d 907 (1978). That decision broadened the definition of "deliberate intention" by holding that "the phrase 'deliberate intent to produce such injury or death' ... mean[s] that an employer loses immunity from common law actions where such employer's conduct constitutes ... willful, wanton, and reckless misconduct." Id. 246 S.E.2d at 914 (citations omitted).
 
 
 22
 In 1983, in response to Mandolidis, the West Virginia Legislature amended the Workers' Compensation Act to provide a statutory definition of "deliberate intention." In supplying the definition, the legislature made clear that it was not removing Mandolidis suits from the "common law tort system." Code Sec. 23-4-2(c)(1) (1983). It simply "intended to create a legislative standard for loss of [employer] immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct." Id.
 
 
 23
 The 1983 amendment, which is still in effect, sets out alternative ways for an employee to prove the "deliberate intention" necessary to strip his or her employer of immunity. First, the employee can prove that the employer "acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury...." Code Sec. 23-4-2(c)(2)(i) (1995). Or, second, the employee can prove specified facts about an unsafe working condition to establish the employer's deliberate intent to injure. Id. at Sec. 23-4-2(c)(2)(ii).[4]
 
 
 24
 The Mandolidis or "deliberate intention" claim has always been considered a creature of the common law. In 1959 the Supreme Court of Appeals said specifically that the "deliberate intention" exception "merely preserves unto an employee his common law right of action to sue for ... an injury" inflicted by deliberate intention. Brewer v. Appalachian Constructors, Inc., 135 W.Va. 739, 65 S.E.2d 87, 92 (1951) (emphasis added). In 1978 the Mandolidis court endorsed this view when it (1) observed that "[t]he workmen's compensation system completely supplanted the common law tort system only with respect to negligently caused industrial accidents" and (2) recognized that the cause of action for injury inflicted by deliberate intention arose under the common law. Mandolidis, 246 S.E.2d at 913-14 (emphasis in original). Accord Parsons v. Shoney's, Inc., 580 F.Supp. 129, 131 (S.D.W.Va.1983) ("Importantly, Section 23-4-2 does not grant or create a hybrid cause of action, but preserves a common law action against the employer.") (citation omitted).
 
 
 25
 The Arthurs concede that prior to 1983 the Mandolidis claim arose under the common law. But this changed, they say, with the 1983 legislative amendment to section 23-4-2. Although the Arthurs acknowledge that the 1983 amendment "preserve[s] elements of the common law tort," they argue it "create[s] a hybrid cause of action." Brief of Appellants at 15, 20. They insist that this hybrid claim arises under workers' compensation law because it requires "construction of [section 23-4-2(c)(2) ]," id. at 20, and that 28 U.S.C. Sec. 1445(c) therefore bars removal of their action.
 
 
 26
 The application and construction of section 23-4-2(c)(2)'s provisions for establishing deliberate intention are essential to the Arthurs' Mandolidis claim. And, section 23-4-2(c)(2) is written into the West Virginia Workers' Compensation Act. However, this does not end our inquiry because we are not bound by where the section appears in the West Virginia Code. Rather, we must determine whether section 23-4-2(c)(2) is a "workmen's compensation law[ ]" as contemplated by 28 U.S.C. Sec. 1445(c).
 
 
 27
 To begin with, section 23-4-2(c)(2) does not prescribe any part of a workers' compensation claim as such claims were understood in 1958. Section 23-4-2(c)(2) simply serves to circumscribe the common law Mandolidis claim. It does not change the fundamental character of the claim, which is still preserved within West Virginia's common law tort system. The Mandolidis claim is filed in the courts, issues of fault are litigated, and there are no statutory limits on the type or amount of compensatory damages. It has none of the administrative, no-fault characteristics associated with a workers' compensation claim.
 
 
 28
 Furthermore, as we discuss more fully below in part II.D., section 23-4-2(c)(2) is not integrally related to the operation of West Virginia's workers' compensation system. It does not protect or enhance the ability of workers to obtain compensation benefits, i.e., fixed benefits without regard to fault for workplace injuries.
 
 
 29
 Finally, it appears that at the time of section 1445(c)'s passage in 1958, no state used a statutory test to prescribe the elements of proof needed to strip an employer of immunity from common law tort actions. West Virginia did not establish the detailed statutory test in section 23-4-2(c)(2) until 1983. Even today, West Virginia stands virtually alone with such a test.[5] While not in itself determinative, the fact that a detailed statutory test for loss of immunity has never been a component of the typical workers' compensation scheme is additional evidence that the 1958 Congress would not have considered section 23-4-2(c)(2) a workers' compensation law.
 
 
 30
 Accordingly, we hold that Code Sec. 23-4-2(c)(2) is not a "workmen's compensation law[ ]" for purposes of 28 U.S.C. Sec. 1445(c). It follows that the Mandolidis claim (as circumscribed by section 23-4-2(c)(2)) does not arise under "workmen's compensation laws."
 
 D.
 
 31
 The relatively few decisions analyzing section 1445(c) do not counsel a result different from the one we reach today. The Arthurs rely on two cases involving claims for retaliatory discharge for seeking workers' compensation benefits, Pettaway v. Wayne Poultry Co., 791 F.Supp. 290 (M.D.Ala.1992), and Kilpatrick v. Martin K. Eby Constr. Co., 708 F.Supp. 1241 (N.D.Ala.1989). In Pettaway and Kilpatrick, the plaintiffs pursued a judicially implied private remedy (damages) under a retaliatory discharge provision in Alabama's Workers' Compensation Act. Both courts concluded that the actions arose under workers' compensation law and held that section 1445(c) barred removal.
 
 
 32
 As an initial matter, not all courts agree with Pettaway and Kilpatrick.[6] In any event, we need not decide in this case whether a statutory retaliatory discharge claim arises under "workmen's compensation laws." We do, however, note the sharp distinction between a retaliatory discharge claim and the Mandolidis claim (as circumscribed by section 23-4-2(c)(2)). The action for retaliatory discharge is integrally related to the just and smooth operation of the workers' compensation system; it insures that those seeking compensation benefits are not scared out of making claims. See Jones v. Roadway Exp., Inc., 931 F.2d 1086, 1092 (5th Cir.1991) (noting that retaliatory discharge claim "enables injured workers to exercise their rights under [the workers' compensation] scheme"). This cause of action therefore aids the overriding purpose of providing fixed, no-fault benefits for workplace injuries. By contrast, the Mandolidis claim has no relationship to providing no-fault benefits and plays no role in promoting the just and smooth operation of the workers' compensation system. The significant differences between a retaliatory discharge claim and the Mandolidis claim render the decisions remanding retaliatory discharge actions inapplicable here.
 
 E.
 
 33
 We emphasize that our decision today does not undermine the primary purpose of section 1445(c), which was to stop the removal of compensation cases that were jamming the dockets of busy federal courts in the handful of states where these claims could be litigated in the courts. In West Virginia, compensation claims have always been filed and decided in the administrative system. Final administrative decisions on these claims may be reviewed only if the Supreme Court of Appeals of West Virginia elects, in its discretion, to exercise jurisdiction. Code Sec. 23-5-15. Nothing about any of this is changed by our decision here. About 70,000 workers' compensation claims are filed in West Virginia each year, and these claims will remain in the state system. See Bureau of Employment Programs, Workers' Compensation Division, Annual Statistical Tables 1994 18.
 
 F.
 
 34
 Section 1445(c) does not bar the removal of this case. We therefore affirm the district court's order denying the Arthurs' motion to remand.
 
 III.
 
 35
 The Arthurs also appeal the district court's grant of summary judgment to DuPont on their Mandolidis claim. The district court awarded summary judgment because the Arthurs failed to produce specific facts (through deposition testimony, affidavits, relevant documents or otherwise) to demonstrate that there was any genuine issue of material fact on key elements of their claim. The Arthurs say the summary judgment decision was premature, and they blame their lack of evidence on DuPont's foot-dragging in discovery and their need to obtain records from OSHA and other government agencies. At the Arthurs' request the district court extended the discovery deadline once, from August 13, 1993, until October 1, 1993. The court observed in the extension order that the Arthurs had "inexplicably chosen not to conduct any discovery prior to the current discovery deadline of August 13, 1993." According to the docket sheet, the Arthurs did not make any motion to compel discovery against DuPont until after the final discovery deadline had passed, and the motion was denied. The Arthurs contend that they did not want to proceed with "complex and burdensome discovery" prior to resolution of the remand question. We reject this explanation. The Arthurs had to sustain the same claim, whether it was litigated in federal or state court. It was appropriate for the district court to take up the summary judgment motion when it did.
 
 
 36
 On the merits, after reviewing the record and the briefs and considering the arguments of counsel, we affirm the grant of summary judgment to DuPont on the reasoning of the district court. Arthur v. E.I. DuPont De Nemours & Co., CA 2:93-0182 (S.D.W.Va. decided December 16, 1993).
 
 IV.
 
 37
 For the foregoing reasons, we affirm the district court's order denying the motion to remand and its judgment order entered in favor of DuPont on the summary judgment decision.
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 Over the years, removed Mandolidis actions have been heard routinely in the federal district courts in West Virginia
 
 
 [2]
 In West Virginia, like most other states, an employee's administrative claim for workers' compensation benefits would not have been removable even prior to the passage of section 1445(c). The West Virginia Workers' Compensation Act has never allowed either an original action in state court for benefits or a de novo action to set aside an administrative award or decision
 
 
 [3]
 Section 1445(c)'s legislative history recognized that disputes over workers' compensation claims were typically decided administratively: "Nearly all of the State statutes on workmen's compensation provide summary proceedings for the expeditious and inexpensive settlement of claims by injured workmen against the employer." S.Rep. No. 1830, reprinted in 1958 U.S.C.C.A.N. at 3106
 
 
 [4]
 The 1983 amendment reads, in pertinent part, as follows:
 The immunity from suit provided under this section and under section six-a, article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention." This requirement may be satisfied only if:
 (i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or
 (ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:
 (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
 (B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;
 (C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
 (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and
 (E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.
 (iii) In cases alleging liability under the provisions of the preceding paragraph (ii):
 (A) No punitive or exemplary damages shall be awarded to the employee or other plaintiff....
 Code Sec. 23-4-2(c)(2) (1995) (emphasis added).
 
 
 [5]
 Alabama has a somewhat similar, but less detailed, statutory standard. See Ala.Code Sec. 25-5-1 et seq
 
 
 [6]
 Compare Thomas v. Kroger Co., 583 F.Supp. 1031, 1037 (S.D.W.Va.1984) (ordering remand under Sec. 1445(c) and noting that the remedy for retaliatory discharge, which protects the rights of workers to pursue claims, "is an integral, even essential component of [West Virginia's] legislatively created workmen's compensation scheme"); Jones v. Roadway Exp., Inc., 931 F.2d 1086 (5th Cir.1991) (ordering remand of retaliatory discharge action brought under article in Texas's workers' compensation statute which provides both the substantive right and a private remedy), with Spearman v. Exxon Coal USA, Inc., 16 F.3d 722, 724 (7th Cir.1994) (permitting removal and holding that the Illinois tort of retaliatory discharge "lacks [for purposes of section 1445(c) ] the essential no-fault element of workers' compensation laws")