**Brenda C. ARNETT, Plaintiff,**

v.

**LEVITON MANUFACTURING, INC., Southern Devices Division, Defendant.**

**No. CIV. 1:01CV94.**

United States District Court, W.D. North Carolina, Asheville Division.

Oct. 11, 2001.

Robert H. Gage, Cox, Gage & Sasser, Morganton, NC, for plaintiff.

David L. Terry, Poyner & Spruill, Charlotte, NC, Robert B. Meyer, McGuire-Woods LLP, Charlotte, NC, for defendant.

## *MEMORANDUM AND ORDER OF REMAND*

THORNBURG, District Judge.

**THIS MATTER** is before the Court on Plaintiff's timely objections to the to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred the Plaintiff's motion to remand to the Magistrate Judge for a recommendation as to disposition. The Magistrate Judge entered a detailed memorandum recommending the Plaintiff's motion be denied. For the reasons stated below, the Court allows the Plaintiff's motion to remand.

## I. STANDARD OF REVIEW

The district court conducts a *de novo* review of those portions of a Magistrate Judge's Memorandum and Recommendation to which specific objections are filed. *See* 28 U.S.C. § 636(b). In this Circuit, *de novo* review is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982). In this case, however, the Plaintiff filed specific objections to the

Magistrate Judge's Memorandum and Recommendation and the same are now considered.

## II. FACTUAL HISTORY

Plaintiff Brenda C. Arnett (Arnett), a resident of North Carolina, is a former employee of Defendant Leviton Manufacturing Co., Inc. (Leviton), a Delaware corporation with its principle place of business in New York. Arnett operated a "screw sticker machine" at the factory operated by Leviton in Morganton, North Carolina. Her complaint alleges that this work caused her to develop carpal tunnel syndrome forcing her to undergo surgery on each of her arms. Arnett filed a claim under worker's compensation for this condition. Plaintiff underwent the second of her two surgeries to correct this problem on May 21, 1999, after which she did not report back to her employer for the period of a week. On June 3, 1999, Arnett was fired from her job. She alleges that this firing was in retaliation for her filing the worker's compensation claim. Leviton asserts that she was discharged because of her unexcused absence from work.

Arnett brought suit in the North Carolina General Court of Justice, Superior Court Division of Burke County, North Carolina, in May 2000 asserting a claim based on North Carolina's Retaliatory Employment Discrimination Act ("REDA"). Leviton removed the case to this Court based on diversity of citizenship under 28 U.S.C §§ 1332 and 1441. The Magistrate Judge thoroughly and appropriately discussed the diversity of citizenship and amount in controversy requirements as they apply to this case and neither party has objected to the finding that both of those requirements are met. Plaintiff's objection is based on 28 U.S.C. § 1445(c) which provides that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Arnett contends that the provisions of North Carolina's REDA statute providing protection to workers against retaliatory employment activity in response to filing a worker's compensation claim "arise under" North Carolina's workman's compensation laws. If this is correct, then removal of this case was improper, and the case must be remanded to the state court.

## III. ANALYSIS

The sole issue presented is whether that portion of REDA which protects workers who file worker's compensation claims from retaliatory action by their employer "arises under" the worker's compensation laws of North Carolina. This issue is governed by federal law not state law. *Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 705, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972). In answering this question, federal courts apply the same analysis to "arising under" as that used in determining federal question jurisdiction under 28 U.S.C. § 1331. *Humphrey v. Sequentia, Inc.,* 58 F.3d 1238, 1246 (8th Cir.1995). As the Supreme Court described that standard,

How and when a case arises under the Constitution or laws of the United States has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or

conjectural one, must exist with reference thereto and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

*Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (internal citations and quotations omitted). The essential question is whether a right created by North Carolina's worker's compensation act constitutes an essential element of the Plaintiff's claim.

The seminal Fourth Circuit case aiding in the making of this determination is *Arthur v. E.I. DuPont deNemours & Co.,* 58 F.3d 121 (4th Cir.1995). The court held that a West Virginia statute which preserved the existing common law cause of action for workplace injury where the employer's conduct was intentional or reckless did not "arise under" that state's worker's compensation statute. *Id.,* at 123–24. In reaching this decision, the court listed five factors to be used in determining whether a statute, such as the REDA provision at issue here, is a "workmen's compensation statute" for § 1445(c) purposes. If the statute is a "worker's compensation law," then the claim "arises under" a worker's compensation law. *Id.* Those factors are (1) whether fault is an issue in determining liability; (2) whether common law suits are barred by the statute; (3) whether there are any limitations on damages; (4) whether there is an administrative agency operating the system on relaxed procedural rules; and (5) whether review of agency decisions is deferential to those decisions. *Id.*

In order to properly analyze REDA under these factors, a brief over-view of its provisions is appropriate. REDA prohibits "discriminating or tak[ing] retaliatory action against an employee" because that employee files or attempts to file a complaint or initiates an inquiry under one of a number of listed provisions of the North Carolina General Statutes. N.C. Gen.Stat. § 95–241. These provisions include filing a claim under the worker's compensation statutes found in Chapter 97 of the General Statutes. N.C. Gen.Stat. § 95–241(a)(1)(a). REDA provides that an employee who has suffered a discriminatory or retaliatory action files a complaint with the Commissioner of Labor. N.C. Gen.Stat. § 95–242. If the Commissioner finds a reasonable basis for the complaint, he will attempt to resolve the problem through informal means. *Id.* If he cannot, he may commence suit against the employer on behalf of the employee. *Id.* If the Commissioner does not file suit or determines there is no reasonable basis for the employee's complaint, he issues a "right-to-sue" letter to the employee. *Id.* At that point, either the Commissioner or the employee may file a civil action in which the prevailing party may be entitled to costs, including attorney's fees, or treble damages, if the employee can show intentional misconduct on the part of the employer. N.C. Gen.Stat. § 95–243. This trial would be *de novo,* not a review of the Commissioner of Labor's decisions. *Id.* This outline of the workings of REDA provides the basis to analyze whether its workmen's compensation protection is a "workmen's compensation law" for the purposes of § 1445(c).

Application of the factors outlined in *Arthur* to REDA leads to the conclusion that it is not a "workmen's compensation law" for purposes of § 1445(c). First, fault on the part of the employer is material to recovery. Plaintiff must show that the retaliatory action occurred as a result

of her filing the worker's compensation claim. In other words, Plaintiff must show the Defendant acted intentionally. This factor does not indicate that REDA is a "worker's compensation law."

Second, REDA creates a separate, statutory cause of action. It does not bar common law suits. In fact, REDA specifically states "[n]othing in this Article shall be deemed to diminish the rights or remedies of any employee under . . . other statutory remedies, or at common law." N.C. Gen.Stat. § 95–244. This factor also indicates that REDA is not a "worker's compensation law."

Third, REDA has expansive damage provisions, not limiting ones. There is no cap on cash benefits as a percent of wages. Rather, REDA provides for treble damages and attorney's fees for a prevailing plaintiff. Again, this factor points REDA away from being a "worker's compensation law."

Fourth, REDA's administrative remedies are operated under relaxed rules; more so than those normally associated with worker's compensation. Therefore, this factor is inapplicable. A dispute over worker's compensation in North Carolina involves a hearing before the Industrial Commission which has its own set of procedures and rules. N.C. Gen.Stat. § 97–77 *et seq.* Under REDA, however, the employee submits a complaint in writing to the Commissioner of Labor, who forwards it to the employer. N.C. Gen. Stat. § 95–242. Based on the complaint alone, the Commissioner makes a determination whether or not to pursue "informal methods" of reconciliation. *Id.* If those fail, or are not attempted, the issue proceeds to court. Given the procedures for administrative review of a REDA complaint are so lax, this factor cannot be said

to indicate that REDA is a "worker's compensation law."

Fifth, the state courts do not conduct any deferential review of agency action under REDA. The factual determinations made by the Commissioner are not involved in the trial *de novo* of the dispute between the employer and employee. No deference is paid to the Commissioner's decision concerning a complaint. Thus the factors described in the *Arthur* decision indicate that REDA is not a "workmen's compensation law" for the purposes of § 1445(c). Therefore, a claim under REDA would not "arise under" a workmen's compensation law according to the five-factor test set forth in *Arthur.* A thorough reading of that decision, however, reveals that it counsels a different result in this instance.

In deciding the *Arthur* case, the Fourth Circuit expressly declined to comment on whether retaliatory discharge claims "arise under" worker's compensation laws. *Arthur,* 58 F.3d at 128. In doing so, however, the court used strong language indicating that retaliatory discharge provisions should be considered a part of worker's compensation laws. The court stated,

> [t]he action for retaliatory discharge is integrally related to the just and smooth operation of the workers' compensation system; it insures that those seeking compensation benefits are not scared out of making claims. This cause of action, therefore aids the overriding purpose of providing fixed, no-fault benefits for workplace injuries.

*Id.* (citations omitted). This language and language found in decisions rendered by other Circuits and discussed *infra* dictate that actions for retaliatory discharge are so closely related to the underlying worker's compensation claims that they must be treated as a part of the worker's compensation system.

The Circuits are split on the issue. Thorough evaluation of the cases reveals that a clear line exists between those which hold that a claim for retaliatory discharge does "arise under" a state's worker's compensation laws and those which do not. The distinguishing factor appears to be whether or not a claim for retaliatory discharge is a common law claim or a statutory claim. The Seventh Circuit is the only court to hold a REDA-type claim does not arise under the worker's compensation laws. *Spearman v. Exxon Coal USA, Inc.*, 16 F.3d 722 (7th Cir.1994). In *Spearman*, the court based its ruling on two grounds. First, because the claim requires proof of some sort of fault on the part of the employer, the claim cannot "arise under" the state's worker's compensation laws. *Id.*, at 725. This is the same distinction made by the first of the five factors set forth in *Arthur*. The Seventh Circuit based this distinction on an earlier holding in *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir.1987). As the dissent in *Spearman* notes, however, the *Lingle* decision rested on the conclusion that the plaintiff's claims raised a federal question and were not state law, retaliatory discharge claims. *Spearman*, 16 F.3d at 726, *see also, Lingle*, 823 F.2d at 1038–39. Furthermore, the *Lingle* decision was ultimately reversed by the Supreme Court (486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)) and, as such, its precedential value is limited.

Secondly, the ruling in *Spearman* relied on the nature of the claim in holding that Illinois' retaliatory discharge action did not arise under the worker's compensation statute. *Spearman*, 16 F.3d at 725–26. The Illinois claim was not a statutory cause of action, rather it was a common law claim created by the Illinois Supreme Court. *Id.; see also, Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). As such, even though the claim protected rights established by the Illinois worker's compensation statute, it did not "arise under" those laws. *Spearman*, 16 F.3d at 725.

Three other Circuits have determined that a state's retaliatory discharge claims arose under the worker's compensation law. *Jones v. Roadway Express, Inc.*, 931 F.2d 1086 (5th Cir.1991); *Humphrey, supra; Reed v. Heil Co.*, 206 F.3d 1055 (11th Cir.2000). In each of these cases, the retaliatory discrimination claim was based on a specific statutory provision of the state in question, *i.e.*, Texas, Missouri, and Alabama. The *Jones* court relied on the notion, repeated in *Arthur*, that retaliatory discharge actions are closely connected to the worker's compensation scheme. *Jones*, 931 F.2d at 1092. In *Humphrey*, the court distinguished the Missouri statutory claim from the common law claim presented in *Spearman* and noted its agreement with *Jones*. *Humphrey*, 58 F.3d at 1244–46. The *Humphrey* court based its conclusion that the Missouri retaliatory discharge statute "arose under" the worker's compensation laws on the close connection between the two both in the structure of the statute and the nature of the claim. *Id.*

The Eleventh Circuit based its *Reed* decision on both the *Jones* and *Humphrey* decisions. *Reed*, 206 F.3d at 1059–60. It noted both that the retaliatory discharge claim was codified with the worker's compensation statute and that the claim was essential to protect the worker's compensation system. *Id.* It also noted the common law-statutory distinction established by the earlier cases. *Id.* Applying the common law-statutory distinction as the dispositive difference on this issue, North Carolina's REDA provision dealing with retaliatory action taken in response to filing a claim for worker's compensation (N.C.Gen.Stat. § 95–241(a)(1)(a)) arises

under the worker's compensation laws of North Carolina.

The Defendant's argument in response to the Plaintiff's objection appears to be focused on the actual location of the retaliatory discharge claim within the North Carolina General Statutes. The claim for retaliatory discharge related to a worker's compensation claim is a part of REDA, codified at N.C. Gen.Stat. § 95–240, *et seq.* The North Carolina Worker's Compensation Act is codified in Chapter 97 of the General Statutes. This is a distinction without a difference. First, the portion of REDA relating to worker's compensation was formerly codified as § 97–6.1 of the General Statutes. *Johnson v. Trs. of Durham Technical Comty. Coll.,* 139 N.C.App. 676, 681, 535 S.E.2d 357, 361 (2000). Just as the Texas statute in *Jones,* North Carolina's REDA provision relating to worker's compensation has been re-codified to another location after originally being included in the worker's compensation statute. *Jones,* 931 F.2d at 1091. Second, the location where a statute is codified is not dispositive of the determination of whether it "arises under" the worker's compensation laws of a state for § 1445(c) purposes. *Id.* As the Fourth Circuit stated in *Arthur,* "we are not bound by where the section appears in the ... Code." *Arthur,* 58 F.3d at 127.

Taking all of these factors into consideration, the Court finds that the provisions of North Carolina's REDA relating to worker's compensation do "arise under" the worker's compensation laws for purposes of 28 U.S.C. § 1445(c). Therefore, removal of this case was improper and it shall be remanded to the State court.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's motion to remand is **ALLOWED,** and this case is hereby **RE-MANDED** to the North Carolina General Court of Justice, Superior Court Division of Burke County, North Carolina.