**Turner O. WILEY, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., Defendant.**

**No. 1:01CV00359.**

United States District Court, M.D. North Carolina.

Oct. 16, 2002.

Kathleen G. Sumner, Jeanette L. Foust, Law Offices of Kathleen G. Sumner, Greensboro, NC, for Plaintiff.

Meredith West Holler, Brian D. Edwards, Alston & Bird, LLP, Charlotte, NC, for Defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge.

As an initial matter, this case is before the court on Plaintiff's timely Motion to Remand to Guilford County Superior Court. After review of both the original submissions and the supplemental briefs of the parties with regard to this motion, the court finds that the instant case is subject to federal jurisdiction under 28 U.S.C. § 1332, but barred from removal by 28 U.S.C. § 1445(c). For the reasons discussed herein, Plaintiff's Motion to Remand will be granted, and Plaintiff's Motion for Attorneys' Fees and Costs associated with his motion for remand will be denied. The court lacks subject matter jurisdiction to rule on Defendant's Motion for Summary Judgment and Defendant's Motion for Sanctions. Therefore, both Defendant's Motion for Summary Judgment and Motion for Sanctions will be dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Turner O. Wiley ("Plaintiff") began working for Defendant United Parcel Service, Inc. ("UPS") in the Greensboro, North Carolina, facility on June 27, 1975, as a part-time employee in a preloader capacity. In 1979, Plaintiff gained full-time employee status as a package driver until he was medically incapable of continuing his driving duties in March 1985. Despite his medical restrictions due to a seizure, two back injuries, and an apparent need to use the restroom frequently, Plaintiff continued to be employed by UPS in several non-driving capacities from 1985 until 1997. Plaintiff was terminated in April 1997 but was rehired by UPS in a newly created position as a car wash fueler in February 1999.

Plaintiff's medical condition worsened, however, on August 30, 2000, when he suffered a seizure on the job which caused a fuel spill. UPS sent Plaintiff to his medical doctor, Dr. Hill, immediately after

the incident. Dr. Hill released Plaintiff to return to work and Plaintiff continued working for the remainder of the day. On August 31, 2000, UPS would not allow Plaintiff to return to work until he had been examined by UPS's medical doctor, Dr. Wittenberg. An appointment was not scheduled for Dr. Wittenberg to examine Plaintiff until September 8, 2000. At that time, Dr. Wittenberg imposed a thirty-pound lifting restriction on Plaintiff and prohibited him from working around hazardous materials but did not release him to return to work.[1] To resolve the discrepancy between the two doctors' opinions, UPS and Plaintiff's union agreed that a third medical doctor should examine Plaintiff.[2] On October 4, 2000, the third medical doctor, Dr. Yuson, agreed with Dr. Wittenberg's recommendations and did not release Plaintiff to return to work. Based on Dr. Yuson's medical opinion, UPS decided to remove Plaintiff from his fueler position for fear that he might have a seizure, spill fuel, and create a worse accident than the previous one.

Two days after Dr. Yuson's examination, Plaintiff filed a workers' compensation claim with the North Carolina Department of Labor, and he subsequently amended the claim on November 8, 2000.[3] The Commissioner of the North Carolina De-partment of Labor issued Plaintiff a right-to-sue letter on December 8, 2000. Subsequent to two medical doctors' restrictions on Plaintiff's ability to work, and UPS's continued efforts to accommodate Plaintiff in all available positions, UPS was unable to return Plaintiff to work in a position that both satisfied his medical restrictions and that he was willing to accept. Despite UPS's repeated attempts to relocate Plaintiff in a mutually satisfactory position, Plaintiff showed up for work on April 24, 2002, and began fueling a truck without prior permission from a UPS supervisor. Since this incident, UPS has worked with Plaintiff to determine whether a reasonable accommodation exists that will enable him to return to work in a manner consistent with his medical restrictions. Both parties have been unsuccessful in finding such a position for Plaintiff at UPS's Greensboro facility.

On March 2, 2001, Plaintiff filed this action in state court alleging that UPS refused to return him to work at any job position within his medical restrictions in retaliation for having filed a workers' compensation claim in violation of the North Carolina Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen.Stat. § 95–241 et seq. (2001).[4] UPS removed

---

1. Although not a part of the original complaint, Plaintiff alleged during discovery that the eight-day waiting period to see Dr. Wittenberg· was a retaliatory action on UPS's behalf. (Pl.'s Dep. IV at 21.) Significantly, UPS's request that Plaintiff see the company's doctor occurred prior to Plaintiff's filing of a workers' compensation claim.

2. According to Plaintiff's collective bargaining agreement, the third doctor's opinion is binding on both the employee and the company.

3. Plaintiff requested a hearing before the North Carolina Industrial Commission after he lost his workers' compensation claim before the Deputy Commissioner. Plaintiff's claim is currently pending before the full commission. (Pl.'s Dep. IV at 15.)

4. Because Plaintiff has stipulated that his REDA claim relates only to the events arising out of the filing of his October 6, 2000 workers' compensation claim, (Pl.'s Dep. IV at 14), only the relevant factual events leading up to Plaintiff's workers' compensation claim have been recited. For a more complete factual background of Plaintiff's medical history and work history at UPS, see Wiley v. United Parcel Serv., 102 F.Supp.2d 643, 645–49 (M.D.N.C.1999), aff'd, 2001 WL 431478, 11 Fed.Appx. 176 (4th Cir.2001) (granting summary judgment in favor of UPS on a similar REDA claim), and Wiley v. United Parcel Serv.,

the case to this court on the basis of diversity of citizenship on April 4, 2001. Plaintiff then moved to remand the case within the statutorily prescribed period on April 18, 2001. Following the close of discovery on May 14, 2002, UPS moved for summary judgment on July 13, 2002.

## II. ANALYSIS

### A. Motion to Remand—Applicability of 28 U.S.C. § 1445(c)

Before ruling on UPS's summary judgment motion, this court must address a significant removal issue underlying Plaintiff's Motion to Remand. This court must rule on Plaintiff's Motion of Remand prior to ruling on Defendant's Motion for Summary Judgment because the court cannot adjudicate any matters if it does not have subject matter jurisdiction to hear the case. *See* Charles Alan Wright, *Law of Federal Courts*, § 41 (5th ed.1994) ("[a]n order of remand ends the jurisdiction of the federal court").

Plaintiff's Motion to Remand does not challenge the diverse citizenship of the parties or the amount in controversy requirement.[5] Rather, Plaintiff's sole basis for challenging this court's subject matter jurisdiction is 28 U.S.C. § 1445(c), which states that "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."

Federal law governs whether section 1445(c) bars removal of Plaintiff's claim. *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 705, 92 S.Ct. 1344, 1349, 31 L.Ed.2d 612 (1972). Section 1445(c) "must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits" are to be removed. *Arthur v. E.I. Dupont de Nemours & Co.*, 58 F.3d 121, 125 (4th Cir.1995) (quoting *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104, 61 S.Ct. 868, 870, 85 L.Ed. 1214 (1941)). The "arising under" analysis applied by the federal courts in determining federal question jurisdiction under 28 U.S.C. § 1331 is the appropriate analysis for 28 U.S.C. § 1445(c). The Supreme Court has described the standard:

How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto, and the controversy must be disclosed upon the face of the com-

---

No. 1:99CV00236, 2000 WL 33356846 at *1–6 (M.D.N.C. Apr. 7, 2000), *aff'd* 11 Fed2000 WL 33356846 .Appx. 181, 2001 WL 431498 (4th Cir.2001) (granting summary judgment in favor of UPS on a claim brought under the Americans with Disabilities Act (ADA)). Notably, the adverse employment action alleged in Plaintiff's prior REDA claim was UPS's termination of Plaintiff, while the adverse employment action alleged here is UPS's failure to return Plaintiff to any job position within his medical restrictions.

**5.** The court finds that both the diversity of citizenship and the amount in controversy requirements have been satisfied to establish federal jurisdiction. Plaintiff is a North Carolina citizen and UPS is incorporated in Ohio with its principal place of business in Georgia. It is undisputed that the amount in controversy exceeds $75,000.

plaint, unaided by the answer or by the petition for removal. Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.

*Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (internal citations omitted).

■ Whether REDA "arises under" the North Carolina Workers' Compensation Act ("N.C. Workers' Comp. Act") is an issue of first impression for this court and has not been decided by the Fourth Circuit.[6] The Fourth Circuit has provided a framework to determine when a cause of action "arises under" the workers' compensation laws of a state, albeit not in the context of a retaliatory discharge statute, such as REDA. In *Arthur,* the Fourth Circuit held that the "deliberate intention" or *Mandolidis* claim did not "arise under" the West Virginia Workers' Compensation Act. *Arthur,* 58 F.3d at 128. Unlike REDA, which is a creature of statute, the "deliberate intention" claim is a creature of common law which provides an exception to the workers' compensation act's exclusive remedies when the employer's conduct is intentional or reckless. *See id.* at 127. In analyzing whether the "deliberate intention" claim arose under the workers' compensation laws of the state, the court identified several factors without singling out any particular factor as controlling: (1)

employer's fault as material to recovery, (2) statutory limits on the types or amount of compensatory damages, (3) existence of an administrative agency operating the system, (4) ability to protect or enhance workers' receipt of compensation benefits, and (5) existence of a detailed statutory test for loss of immunity. *Id.* at 127. The court viewed these factors in light of the ordinary meaning of "worker's compensation laws" as it was understood in 1958, the year Congress passed section 1445(c). *Id.* at 125.

In dicta, the *Arthur* court noted a distinction between a "deliberate intention" claim and a retaliatory discharge claim. *Id.* at 128 ("The significant differences between a retaliatory discharge claim and the *Mandolidis* claim render the decisions remanding retaliatory discharge actions inapplicable here."). In general terms, the Fourth Circuit stated that

> [t]he action for retaliatory discharge is integrally related to the just and smooth operation of the workers' compensation system; it insures that those seeking compensation benefits are not scared out of making claims ... [t]his cause of action therefore aids the overriding purpose of providing fixed, no-fault benefits for workplace injuries.

*Id.* Thus, specific application of the *Arthur* factors to REDA is not appropriate because of this distinguishing language by the Fourth Circuit.[7]

---

6. The Fourth Circuit declined to rule on this precise issue in a prior action involving these same parties because of Plaintiff's failure to object timely to removal. *Wiley v. United Parcel Serv.,* 11 Fed.Appx. 176, 2001 WL 431478, at *1 (4th Cir.2001). The District Court for the Western District of North Carolina is the only federal court in the Fourth Circuit that has ruled squarely on this issue. *See Arnett v. Leviton Mfg., Inc.,* 174 F.Supp.2d 410 (W.D.N.C.2001) (holding that removal was improper under 28 U.S.C. § 1445(c)).

7. The Western District of North Carolina analyzed a REDA claim under the *Arthur* factors and initially concluded that REDA did not "arise under" the N.C. Workers' Comp. Act. *Arnett,* 174 F.Supp.2d at 415 (remanding the case because of *Arthur's* dicta regarding differential treatment of retaliatory discharge claims). This court agrees with *Arnett's* conclusion but declines to follow *Arnett's* analysis completely. Without further guidance from the Fourth Circuit, this court refrains from naming any one factor as the "dispositive

Without controlling Fourth Circuit authority, this court must refer to two lines of circuit court cases to determine whether REDA "arises under" the N.C. Workers' Comp. Act. The first line of cases involves retaliatory discharge claims developed by the common law, sometimes referred to as an "independent tort action" or an "independent common-law tort." *See, e.g., Spearman v. Exxon Coal USA, Inc.,* 16 F.3d 722, 725 (7th Cir.1994); *Rundle v. Frontier–Kemper Constructors, Inc.,* 170 F.Supp.2d 1075, 1080 (D.Colo.2001); *Hanna v. Fleetguard, Inc.,* 900 F.Supp. 1110, 1122 (N.D.Iowa 1995); *Gonzales v. City of Mesa,* 779 F.Supp. 1050, 1052–53 (D.Ariz. 1991).

The second line of cases involves retaliatory discharge claims brought pursuant to a state statute. *See, e.g., Reed v. Heil Co.,* 206 F.3d 1055, 1058 (11th Cir.2000); *Humphrey v. Sequentia, Inc.,* 58 F.3d 1238, 1245 (8th Cir.1995); *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1091–92 (5th Cir.1991); *Farrior v. Sodexho, USA,* 953 F.Supp. 1301, 1301 (N.D.Ala.1997). All courts in the second line of cases have held that a statutory-based retaliatory discharge claim "arises under" the workers' compensation laws of the state, even though the two statutes might be located in different chapters of the state's general statutes. In fact, some circuit courts have stated that a state's decision not to codify a retaliatory discharge statute in part of its workers' compensation chapter should not affect the court's inquiry into whether the statute "arises under" the workers' compensation laws for removal purposes. *Jones,* 931 F.2d at 1091–92; *Arthur,* 58 F.3d at 127.

*Spearman* is the seminal case involving a judicially created retaliatory discharge action and its relationship to the state's workers' compensation law for removal purposes. There, the plaintiff alleged that his employer terminated him in retaliation for filing a workers' compensation claim. *Spearman,* 16 F.3d at 723 (7th Cir.1994). After the defendant moved to remand the case pursuant to section 1445(c), the Seventh Circuit held that removal was appropriate because the Illinois tort of retaliatory discharge lacked the essential elements of a workers' compensation law. *Id.* at 724. Specifically, the court stated that merely because the workers' compensation law underlies the tort of retaliatory discharge does not mean the tort "arises under" the state's workers' compensation laws. *Id.* at 725. A retaliatory discharge claim can be adjudicated without reference to the meaning of the workers' compensation laws because the employer's motive for the adverse action is the main issue in retaliatory discharge claims. *Id.* Congress could not have intended, the *Spearman* court concluded, for such a fault-based claim to "arise under" a state's workers' compensation law at the time section 1445(c) was enacted in 1958. *Id.* at 724–25.

In contrast, when a retaliatory statute is at issue, the fault/no-fault distinction between the retaliatory discharge and workers' compensation regimes is less significant.[8] In *Humphrey,* the Eighth Circuit held that a retaliatory discharge action brought pursuant to Missouri Revised Statute § 287.780 "arose under" the Mis-

---

difference on the issue." *Id.* at 416–17 (holding that application of the common-law statutory distinction is the determining factor in deciding whether REDA "arises under" the N.C. Workers' Comp. Act).

8. The second line of cases, involving judicially created retaliatory discharge claims, does not resolve squarely the question of how Congress could have intended section 1445(c) to apply to statutory claims of retaliatory discharge that are inherently fault based.

souri Workers' Compensation Act for removal purposes. *Humphrey,* 58 F.3d at 1246. The court relied solely on the Supreme Court's "arising under" standard in *Gully* in holding that the right established under the state's retaliatory discharge statute was an essential element of the plaintiff's claim. *Id.* Significantly, the statute at issue in *Humphrey* prohibited retaliatory conduct for workers' compensation filings only. Thus, *Humphrey*'s analysis does not answer completely the question of whether a broad-based retaliatory discharge statute, such as REDA, "arises under" the workers' compensation laws of the state pursuant to section 1445(c). *Jones* is most analogous to the case at hand because it is the only circuit court case involving a retaliatory discharge statute located in a separate statute from the state's workers' compensation act. *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1092 (5th Cir.1991). In *Jones,* the Fifth Circuit held that the retaliatory discharge statute under article 8307c "arose under" the workers' compensation laws of Texas. *Id.* at 1091. In its analysis, the court looked to the Texas legislature's stated reason for enacting the retaliatory discharge statute: "to safeguard its workers' compensation scheme." *Id.* at 1092. The integral relation of the retaliatory discharge statute to Texas' workers' compensation laws persuaded the court that the statute "arose under" the state's workers' compensation laws. *See id.*

Fitting REDA into one of the two lines of cases established by the circuit courts is a difficult matter. Although REDA clearly does not fit into the first line of cases (judicially created retaliatory discharge actions), REDA is also not a firm fit into the second line of cases (statutory-based retaliatory discharge claims). Unlike *Humphrey* and *Jones,* where the retaliatory statute at issue provided a private action for workers' compensation claims exclu-

sively, the statute at issue here provides broad-based relief for a variety of claims. REDA prohibits retaliation for those who file claims (and other protected activity) under the Occupational Safety and Health Act of North Carolina, the Mine Safety and Health Act, the North Carolina Wage and Hour Act, the North Carolina Workers' Compensation Act, and the North Carolina statutes prohibiting discrimination based on sickle cell or hemoglobin C traits. *N.C. Gen.Stat.* § 95–241 (2001). In pertinent part, section 95–241 states that:

(a) No person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to do any of the following:

(1) File a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to any of the following:

    a.  Chapter 97 of the General Statutes.

    b.  Article 2A or Article 16 of this Chapter.

    c.  Article 2A of Chapter 74 of the General Statutes.

    d.  G.S. 95–28.1.

    e.  Article 16 of Chapter 127A of the General Statutes.

    f.  G.S. 95–28.1A

*N.C. Gen.Stat.* § 95–241(a)(1) (2001).

In addition to this provision, section 95–242 creates a civil action for employees to pursue their retaliatory claims with the Commissioner of Labor. The Commissioner may commence the suit if a reasonable basis is determined and informal problem solving is not effective. *Id.* § 95–242. In the alternative, section 95–243 enables the Commissioner to issue a right-to-sue letter to the employee if no reason-

able basis is found for the complaint, or the Commissioner decides not to commence the suit. In either instance, the employee or the Commissioner may seek and the court may award an injunction, reinstatement, lost wages, lost benefits, economic losses, and reasonable costs and expenses, including attorney's fees. *Id.* § 95–243(4). If the court finds that the employer's misconduct was intentional, the employee may be entitled to treble damages. *Id.*

Defendant UPS argues that this court should follow the Seventh Circuit's ruling in *Spearman* in focusing on the significant differences between the fault-based framework, administrative remedies, and damages provisions of REDA and the N.C. Workers' Comp. Act. However, a retaliatory discharge statute is at issue here, as opposed to the "independent tort action" at issue in *Spearman.* Though the policy arguments underlying *Spearman* are not insignificant to a statute-based retaliatory discharge claim, they are not sufficiently persuasive for this court to depart from the rulings of other circuit courts with statutes similar to REDA.

On its face, REDA appears to be a separate, comprehensive statute, not contained, or limited in scope by the N.C. Workers' Comp. Act. However, REDA's history as an outlet for employees to pursue their workers' compensation benefits without fear cannot be undermined by this court. Simply because REDA enumerates other prohibited areas of retaliatory discharge besides workers' compensation does not mitigate the fact that REDA's genesis is in the workers' compensation laws of North Carolina.[9] Indeed, the es-

sential element of the N.C. Workers' Comp. Act that REDA furthers, for purposes of section 1445(c), is the provision of an open forum for employees to pursue their workers' compensation remedies. *See Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

Despite REDA's ties to the workers' compensation laws of North Carolina, this court is not persuaded completely that the policies which Congress sought to further by enacting section 1445(c) are furthered by remanding this case to state court. Whether the state compensation machinery will be utilized, and whether the state court will be restricted to a purely local dispute, not implicating federal concerns, are less than clear. *See Farrior v. Sodexho, USA,* 953 F.Supp. 1301, 1309 (N.D.Ala. 1997) (enumerating congressional policies in enacting section 1445(c)). In the absence of direct evidence, this court has analyzed REDA claims under the Title VII analysis of *McDonnell Douglas. See Wiley v. UPS,* 102 F.Supp.2d 643, 650 (M.D.N.C.1999). Federal concerns play a large role in such an analysis. Additionally, it is unclear how the state's compensation scheme would be of any avail to the complicated inferential proof mechanism set forth in *McDonnell Douglas.*

Whether the federal docket will be less burdened is more likely to be answered affirmatively because federal courts in North Carolina have frequently adjudicated REDA claims. *See, e.g., Wilkerson v. Pilkington North America, Inc.,* 211 F.Supp.2d 700 (M.D.N.C.2002); *Greene v. Dialysis Clinic, Inc.,* 159 F.Supp.2d 228

9. In 1979, the workers' compensation portion of REDA was enacted as part of the N.C. Workers' Comp. Act in Chapter 97 of North Carolina's General Statutes. *Johnson v. Trustees of Durham Technical Cmty. Coll.,* 139 N.C.App. 676, 681, 535 S.E.2d 357, 361

(2000) ("REDA replaced North Carolina General Statutes section 97–6.1, the purpose of which was to promote an open environment in which employees could pursue remedies under the Workers' Compensation Act without fear of retaliation from their employers.").

(W.D.N.C.2001); *Wiley,* 102 F.Supp.2d at 643; *Sayers v. ABB C–E Servs., Inc.,* 1997 U.S. Dist. LEXIS 18304 (W.D.N.C. Oct. 15, 1997); *Watkins v. Martin Mills, Inc.,* 1996 WL 1132745 (M.D.N.C. Dec. 13, 1996). On balance then, this court is persuaded that at least one of Congress' policies in enacting section 1445(c) will be furthered if REDA claims are remanded to state court. REDA is so integrally related to the N.C. Workers' Comp. Act that it "arises under" the act for removal purposes pursuant to section 1445(c). Accordingly, this court lacks subject matter jurisdiction. This case was improperly removed and shall be remanded to the Guilford County Superior Court pursuant to 28 U.S.C. § 1445(c).

### III. CONCLUSION

For the reasons set forth above, the court will grant Plaintiff's Motion to Remand, deny Plaintiff's Motion for Attorneys' Fees and Costs, dismiss Defendant's Motion for Summary Judgment, and dismiss Defendant's Motion for Sanctions.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.